## Van Stan's Stratena Company, Limited, Appellant, *v.* Van Stan.

*Trade-marks—Name of inventor—Assignment—Fraud—Imitation of labels and packages.*

Where in a trade-mark bill it appears that the defendant's father, the inventor of a ware, had assigned to the plaintiff's assignor the right to manufacture the ware, and use the inventor's name, and that the son after having been in the employment of the plaintiff for a number of years, withdraws from such employment and proceeds to sell the ware, using his own name and simulating plaintiff's label, advertisements and trade circulars with intent to deceive the public, the defendant will be restrained by injunction. Under such circumstances the defendant cannot use his own proper name irrespective of the question of fraudulent intent.

Argued March 24, 1904. Reargued April 27, 1904. Appeal, No. 1, Jan. T., 1904, by plaintiff from decree of C. P. No. 2, Phila. Co., Dec. T., 1899, No. 236, dismissing bill in equity in case of Van Stan's Stratena Company, Limited, v. Victor F. Van Stan. Before MITCHELL, C. J., DEAN, BROWN, MESTREZAT and THOMPSON, JJ. Reversed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* among others was decree dismissing the bill.

*Robert S. Pettet*, p. p.

*Frederick J. Knaus*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 10, 1904:

This is a bill by plaintiff to restrain defendant from unlawful infringement of its trade-mark. The bill avers that prior to the year 1876, there had been discovered or invented an article of sale or commerce known in trade as "Van Stan's Stratena Cement," which in the year 1878 became by purchase and assignment the property of this plaintiff, "Van Stan's Stratena Company, Limited," with the exclusive right, title and

interest in the recipe, manufacture, good will, trade-mark and property in said "Van Stan's Stratena Cement," since which date, 1878, plaintiff down to this time, has continued to manufacture and offer for sale as well as advertise for sale said cement under said trade-name. That thirteen years after said plaintiff had acquired and had been exclusively using said trademark and after it had built up a valuable trade in the article under that name, the defendant, Victor F. Van Stan, came to Philadelphia from England and was employed by plaintiff company, in assisting to manufacture, put up and sell the said cement, and consequently had opportunity to learn the business of manufacturing it, the names and places of business of plaintiff's customers. That he remained in plaintiff's employment about six years, then left and set up in business for himself; then commenced to manufacture and put on the market an article named and advertised an "Van Stan's Improved Cement;" that his wrappers have printed thereon imitations of plaintiff's trade-mark, and the bottles have blown thereon the words "Van Stan's Cement;" that in many other ways and by other devices he endeavors to imitate plaintiff's trade-mark and deceive purchasers and the public and succeeds in so deceiving them; that the article manufactured by defendant is an inferior one, and therefore plaintiff's business by his wrongful acts is prejudiced and injured. Plaintiff prays that defendant be enjoined from appropriating and using its trade-mark.

The answer either admits or does not deny many of the material facts averred in plaintiff's bill; he does deny any imitation of plaintiff's label or trade-mark except the use of the proper name Van Stan, which he claims is his own, given him by his parents and which therefore he claims he has a right to use ; he further denies any intent to fraudulently copy, counterfeit or simulate plaintiff's trade-mark or label. The court below after hearing much evidence, in both its findings of facts and conclusions of law decided against plaintiff and dismissed its bill. From that decree comes this appeal.

This plaintiff, as in most cases where a party undertakes to act as his own counselor and attorney, however good a case he may have, fails to present properly its merits to either the trial or appellate court. In a paper-book of nearly 200 pages appellant here has, to use the most expressive word, made a

" mess " of it, but after argument and after reargument, and arranging and classifying the abundance of material we are enabled to arrive at a satisfactory conclusion, as to both fact and law. This imposed a large amount of drudgery upon us, for the learned judge of the court below was content with a bare finding of the facts and six meagre conclusions of law. Then a pro-forma final decree was made, we suppose to enable the plaintiff to reach this court, by another judge who did not sit in the cause nor hear the evidence or argument. But the importance of the case to the parties demands that we should carefully and fully consider it, notwithstanding its slovenly presentation. We take first, the three statements of the learned judge, termed by him conclusions of law, though the last two of them are clearly findings of fact, for on these in our view of the evidence the decree turns :

"1. Victor F. Van Stan has a legal right to use his name in connection with the manufacture and sale of cement.

" 4. There has not been shown any fraud or fraudulent intent on the part of defendant to deceive the public into the belief that his wares were or are those of complainant. Upon this question, the fact that defendant upon all his bottles and advertisements used his full name ' Victor F. Van Stan or V. F. Van Stan ' instead of the general ' Van Stan ' of the plaintiff, has some significance.

" 5. There is no such similarity between the wares of the plaintiff and those of the defendant as would be likely to deceive an ordinary purchaser using ordinary caution."

Whether the defendant has a legal right to use his own name in connection with the manufacture and sale of cement, as it was used here, will depend, not alone on the fact that it was his own proper name, but what answers from the evidence should be given to the fourth and fifth conclusions of law. Was there a fraudulent intent in so using it, and was there such similarity in the wares as was likely to deceive an ordinary purchaser? To answer these questions we must turn to the undisputed and established facts as well as to the admissions in the answer filed.

Notice the facts in narrative : Frederick Van Stan lived in England ; he there had discovered a peculiar combination of substances entering into the make-up of cement and for years

prior to 1876 manufactured and sold there, to the public, his combination under the name of Van Stan's Stratena Company cement; on the first day of July of that year he formally transferred a right to John A. Keenan of Philadelphia; the transfer is in writing and recites that for a valuable consideration Frederick Van Stan transfers " All his right, title, interest, name and trade-mark, with the recipe' and privilege of manufacturing the same, known and now used and which has hitherto been sold by me, as Van Stan's Stratena Cement, giving the said John Keenan the sole right to manufacture and sell the said article and to use my name and trade-mark in the sale of the same in the United States." The present plaintiff company was duly organized under the general act of this commonwealth of 1874 and to it has passed by regular transfer all the rights which passed to Keenan by the formal transfer of the original Van Stan in 1876, and the plaintiff or its predecessors in title or right have down to this time continued to manufacture, advertise and sell the article under the name of Van Stan's Stratena Cement, or as Van Stan's Cement. Now notice the defendant's Victor F. Van Stan's connection with the case. He is a son of Frederick Van Stan, the inventor and original owner of the cement; he worked with his father some years in England before coming to this country, and there was taught by him the secrets of its manufacture and how to prepare and sell it; he was also a partner in his father's firm which prepared and sold the article in the year 1876, the date the father made the formal transfer to Keenan. In the year 1889 Victor came from England to Philadelphia, called at the establishment of plaintiff with an introductory letter from his father, was very needy and was assisted pecuniarily by plaintiff; some months afterwards was given permanent employment in which he remained for five or six years; during this time he became thoroughly acquainted with his employer's patrons, and customers, not only in Philadelphia but throughout the United States; knew all the details of their methods of doing business; almost the entire business was at times entrusted to him; at the end of that time he quit the employment and went back to England where he remained several months and while there conducted a cement sale stand on a street corner in London; he then returned to Philadelphia,

again sought employment from plaintiff and on being refused, declared that his father had been robbed, meaning by the transfer of his right in 1876, and declared he would start an opposition to plaintiff.

Soon after plaintiff discovered he was selling to purchasers an article labeled by him, "Victor F. Van Stan's Cementine" was also advertising it in journals, at times using the name "Van Stan's Improved Cement." The words "Van Stan's Cement" are conspicuous in defendant's cards and labels, while the word "improved" is in small letters and inconspicuous. The labels at a glance appear to be the same; only by a close inspection is the difference noticeable; the general appearance of the printing on the labels and wrappers, the letters on the bottles strongly resemble plaintiff's and the shape and size of the bottles are much the same. But a letter of his to a customer of plaintiff shows conclusively the extent of his representation; he says: "I am informed that some time ago one R. S. Pettet, trading as 'The Van Stan's Stratena Company,' issued a bogus legal notice circular to the trade. As I am the only Van Stan now in the cement business, this is undoubtedly a libelous attack on me." By plain implication defendant here asserts the exclusive right to manufacture the cement and denies plaintiff's right. Then in a circular to druggists and the trade, advertising his cement, he declares that his cement "Is manufactured by the son of the original Van Stan who exhibited at the Centennial Exhibition of 1876." Numerous specimens of the circulars, labels and trade-marks are here before us in the paper-books; an inspection of them in connection with the evidence, not only plainly shows that the defendant's cement was not only calculated to mislead and deceive the public, but that in many instances it did actually deceive. The evidence further clearly shows that defendant intended to so mislead and deceive. If defendant simulated plaintiff's name, labels, advertisements and trade circulars with intent to deceive the public he committed a wrong on plaintiff which equity is bound to enjoin.

It is not from any single fact that the intention to simulate plaintiff's trade-mark is made apparent, but from all of them viewed together in connection with his conduct. The exclusive right of plaintiff to the use of "Van Stan's Stratena Cement"

is established beyond question, in fact in the trial in the court below is conceded. The name "Van Stan" is odd, unique; for a quarter of a century, so far as known, plaintiff had enjoyed the exclusive use of it as a trade-mark; it had spent many thousands of dollars in introducing it to the public by advertisement and otherwise; it does not follow that defendant had the right to offer for sale a cement with his proper name appended, irrespective of the question of fraudulent intent. Victor F. Van Stan was a partner with his father in England in 1876 when the father transferred to Keenan the exclusive right to use the name as a trade-mark in the United States; then afterwards Victor consummated the transfer by a delivery of another paper confirming the right evidenced by the first transfer. In Russia Cement Co. v. Le Page, 17 N. E. Repr. 304, the Supreme Court of Massachusetts says: " It is also true one may so sell or part with the right to use his own name, as a description or designation of a manufactured article as to deprive himself of the right to use it as such and confer the right upon another." To the same effect are Fish Bros. Wagon Co. v. La Belle Wagon Works, 52 N. W. Repr. 595, Stonebraker v. Stonebraker, 33 Md. 252; Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278, and many other cases. Here the transfer by the father of a partnership asset, in effect joined in by the son, precluded the son from afterwards using the name to the injury of the purchaser although the name he now attempts to use is his own proper name.

But assuming that he had a technical right to use his own name, he clearly had no right to use it to deceive the public, for such use would be a fraud upon the clear right of the purchasers of the trade-mark. That he intended to and did deceive we have already declared, is manifest from the evidence. It must be noticed that both cements were put up in small ten cent bottles, similar in size, name of proprietor, similar in handwriting or script on label, both manufactured in the same city a few doors apart. It is wholly improbable that the public will make a close inspection of such a small cheap article. As was said in Crucible Co. v. Guggenheim, 7 Phila. 408, where the subject of litigation was small packages of stove polish, " It is true wholesale dealers may generally understand the

difference between the two articles, but the small retail dealers scattered over the world do not so understand this distinction, and if they did might not regard it much less their customers."

We think under the facts here disclosed:

1. Defendant had not the right to use his own name or description as a trade-mark of the cement manufactured and offered for sale by him.

2. There has been shown a fraudulent use of plaintiff's trade-mark in advertising and selling his cement.

3. There is such similarity between the wares of plaintiff and those offered for sale by defendant as would be likely to deceive the ordinary purchaser.

As to the exceptions filed by defendant to neglect by plaintiff to conform to rule of court, in filing and service of paper-book, the circumstances were such that he is not blamable. The judge who heard the evidence and argument resigned his office before final decree; within a reasonable time afterwards plaintiff had a formal decree entered by another judge and as soon as he could do so thereafter printed and served his paper-book, therefore, the motion to quash is overruled.

And further the decree of the court below is reversed and plaintiff's bill is reinstated.

It is further directed that the defendant pay the costs.

And now October 10, 1904, upon due consideration it is ordered and decreed that defendant, his agents and servants be perpetually enjoined and restrained from selling or offering for sale directly or indirectly any article of cement in bottles of clear glass with labels or wrappers or drawings thereon simulating plaintiff's trade-mark or copies or imitations of plaintiff's trade-name, and using the name " Van Stan's Cement " in labeling, advertising and exposing defendant's cement for sale. And further that defendant account for in the court below any profits made by him in the wrongful use as herein set out of said plaintiff's trade-mark.