# Hohenstein *v.* Perelstine, Appellant.

*Trade-mark—Unfair competition in trade—Fraud—" Carter shoe."*

The general rule is that anything done by a rival in the same business, by imitation or otherwise, designed or calculated to mislead the public in the belief that in buying the product offered by him for sale, they were buying the product of another's manufacture, would be in fraud of that other's rights, and would afford just grounds for equitable interference.

*Appeals—Findings of fact—Equity—Review.*

Where the conclusions of fact reached by the trial court in an equity case rest upon sufficient evidence, and the record discloses no manifest error in their deduction from the evidence, the appellate court will not reverse the decree based upon the findings, and this is the case although the evidence may be conflicting.

Argued April 27, 1908.   Appeal, No. 37, April T., 1908, by defendants, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1906, No. 71, on bill in equity in case of Isaac Hohenstein and Louis Jacobson, trading at The Griswold Shoe Company, v. Abraham Perelstine et al.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Bill in equity for an injunction.

MILLER, J., specially presiding, filed the following opinion:

The bill is to restrain the defendants from advertising and selling a shoe known as the Carter shoe, or the Captain Carter Foot Form Shoe, alleging that it is an attempt to infringe upon plaintiffs' trade-mark, and an attempt to deceive by selling said shoe as the Carter shoe, the sole right of which belongs to the plaintiffs.

The answer denies the infringement, and avers that the name used is separate and distinct from that used by plaintiffs; that there has been no deception and no intention to deceive the public in the sale of defendants' shoes as those sold by the plaintiffs.

### FINDINGS OF FACT.

1. The plaintiffs are at present doing business under the name of The Griswold Shoe Company, the same being the retail shoe business at No. 217 Smithfield Street, Pittsburg. Hohenstein, one of the plaintiffs, for a number of years before carried on the same business in the basement of the Marine National Bank, No. 303 Smithfield street, being on the opposite corner from that now occupied by the plaintiffs.

2. The defendants conduct the retail shoe business at present in the basement of No. 301 Smithfield street, formerly occupied by the plaintiffs, into which place they moved April 1, 1901, and from which the plaintiffs removed February 1, 1901.

3. For a number of years one David Carter had been in the shoe business on Fifth avenue, near Wood street, and had made a speciality of a peculiar shaped broad toed shoe which he advertised as the Carter shoe, made for comfort and tender feet. These shoes were made by lasts which Carter designed. When Carter retired from the shoe business some four or five years ago, he sold and assigned to Hohenstein, one of the plaintiffs, the lasts upon which this peculiar shoe known as the Carter shoe was made and manufactured, and also gave him the right to sell and advertise said shoe as the Carter shoe, in the same manner as he, Carter, had done when in business. Hohenstein made a speciality in his business of this broad toed Carter shoe, and adopted the word "Carter" as a trade-mark. He made special efforts and spent large sums of money in advertising said shoe, and by reason thereof established an extensive sale or business therefor.

4. After the plaintiffs had removed from 301 Smithfield street and defendants moved in, the latter advertised and sold a broad toed shoe similar to that described in the third finding of fact, marking the ribbon used for pulling on the shoe with the name on the inside "The Captain Carter Foot Form Shoe," whereupon the plaintiffs caused notice to be given defendants and other shoe dealers that they had the sole right to manufacture and sell this shoe under the name of the Carter shoe, and that they had made application for and had been granted the right to register said name as their trade-mark under the Act of June 20,

1901, P. L. 582; this trade-mark consists of the word "Carter" preferably arranged below the picture of a carter driving an animal; this trade-mark grant provided that the same as registered was intended to be appropriated to dealings in boots, shoes and footwear; that the grantee has the right to use the same, and that no other person or persons, copartnership or corporation has a right to such use either in the identical form or in any other such near resemblance thereto as may be calculated to deceive. The defendants subsequent to notice from the plaintiffs and to notice of the registry of plaintiffs' trade-mark, on September 14, 1905, twelve days after the last notice, sold to two customers who went in defendants' place of business for the purpose of buying a pair of shoes, who, after looking at several pairs, stated to the clerk that what they desired was a broad easy shoe, whereupon the clerk replied, "Yes, I know what you want, the Carter shoe," and produced a shoe with the tag or ribbon marked Captain Carter Foot Form Shoe, and sold the same to them. There was also evidence that they sold shoes under said name as the Carter shoe to a man by the name of Tillbrook. The further fact is found that the defendants at No. 301 Smithfield Street exhibit and advertise with the picture hereinafter described, and sell a shoe similar in all appearance to that sold by the plaintiffs, which is marked on the ribbon as hereinbefore described, the Captain Carter Foot Form Shoe.

6. The defendants and one Carter, a steamboat pilot or captain, entered into an agreement that Carter's photograph should be taken holding this style of shoe in his hand, and that the same should be exposed in their show windows among the shoes which were tabbed or marked as hereinbefore set forth the Captain Carter Foot Form Shoe.

CONCLUSIONS OF LAW.

1. The use of the words the Captain Carter Foot Form Shoe on the defendant's ribbon attached to their shoes, taken in connection with their oral representations in making sales that said shoes were the Carter shoes, is an infringement of plaintiffs' right to the name "Carter," and an imitation of plain-

tiffs' trade-mark to that extent; it is the use of such a likeness or imitation thereof as is calculated to deceive, and was used by the defendants with intent to deceive the general public, and to deprive the plaintiffs of their right thereto to that extent.

2. An injunction will be granted restraining the defendants from advertising or selling their broad toed shoes under the name and with the label of the Captain Carter Foot Form Shoe, or representing the same to be in any way the Carter shoe.

3. The penalty fixed by the trade-mark act of 1901, will not be imposed; but this without prejudice to the plaintiffs to bring suit in a court having jurisdiction, of an action for a fine or penalty.

4. The plaintiffs are entitled to an accounting from defendants of all shoes sold under the name of the Captain Carter Foot Form Shoe, or of the Carter shoe.

5. The defendants must pay the costs of these proceedings.

## OPINION.

David Carter originated, manufactured, stamped with his name and sold this special broad toed shoe so designed according to his own ideas, built from lasts of his own invention; for the sale of these shoes thus manufactured and advertised, he built up an extensive trade.

Hohenstein by permission and purchase from Carter acquired all the rights Carter exercised or claimed. The reputation and sale of the Carter shoe was well established, and Hohenstein as Carter's successor had the exclusive privilege and a valuable asset. So far as it was possible he protected his right and property by obtaining from the state a recognition of said right under the trade-mark provision of the act of 1901. The reputation of the name and of the shoe itself being thus established and having acquired a large sale, when Hohenstein moved from the basement of 301 Smithfield street, and Perelstine moved in, the latter desired to hold or make trade for what might be passed off as the Carter shoe. To carry it into effect he devised the scheme upon which his defense is based, to wit: the arrangement with a steamboat pilot as to the photo-

graph and the use of the name Captain Carter Foot Form Shoe found on the inside of the tag or strap used to pull on the shoe. Defendants' contention that this was not intended to infringe upon plaintiffs' sale of the well-established Carter shoe is not borne out by the facts, in view of the testimony that in at least two instances they sold shoes not as the Captain Carter Foot Form Shoe, but as the Carter shoe. By this deceitful practice defendants imposed upon the public to the prejudice of the plaintiffs. The manner of marking and advertising the so-called Captain Carter Foot Form Shoe is calculated to deceive the incautious and unwary, and thereby deprive the plaintiffs of their just gains and profits: Colton v. Thomas, 2 Brewster, 308.

The similarity amounted to false representation that defendants' shoes had the same origin and that they are of the same manufacture as plaintiffs': Dixon Crucible Company v. Guggenheim, 2 Brewster, 321.

The name "Carter" stamped upon the soles of plaintiffs' shoes, coupled with the manner in which the manufacture and the use of the same began and so continued, distinguishes their origin and make, and protects an infringement thereof, and is within one of the principles deduced by Upton, and affirmed in the case last cited.

The defendants have pirated from plaintiffs' trade-mark, that which gives it its chief value, to wit: the name "Carter," and is using it in connection with the other words on their shoe. This name is the distinguishing feature; eliminate it from the trade-mark and its distinctive characteristic is gone: Ayer v. Hall, 3 Brewster, 509.

The registry of plaintiffs' trade-mark and the grant of the commonwealth to use the same was notice to the world of a property right therein; of this defendants had specific notice and therefore proceeded at their peril.

While the defendants' imitation or use of the name "Carter" is only partial, containing such additions or variations as to be readily disclosed on comparison, yet it is manifest that a resemblance exists; the use of the name "Carter" was designed to mislead and did mislead; and when it came to the actual

sales found in the findings of fact no attempt was made to impress on the purchaser the fact that the shoe sold was any other than the well-known Carter shoe.

The current of authority is that no premium or encouragement will be given "to the cunning and crafty" to exercise their ingenuity to accomplish by cheating, skillfully executed, that which they would not be allowed to do by a direct and undisguised piracy: Colton v. Thomas, 2 Brews. 308.

The conclusions heretofore reached are amply sustained by the application of the principles announced in Heinz v. Lutz, 146 Pa. 592; Van Stan's Stratena Co., Limited, v. Van Stan, 209 Pa. 564; Paul on Trade-Marks, p. 210.

*Error assigned* was the decree of the court awarding injunction.

*Marcus W. Stoner,* for appellants.—The decree was not justified by the evidence: Dixon Crucible Co. v. Guggenheim, 2 Brewst. 321; Ferguson v. Davol Mills, 2 Brewst. 314; Collins Co. v. Cowen, 3 Kay & Johnson, 428; Corwin v. Daly, 20 N. Y. Super. Ct. 222; Desmond's App., 103 Pa. 126; Heinz v. Lutz, 146 Pa. 592.

*Jas. T. Buchanan,* for appellees.—For a discussion and statement of the principles of law applicable to the facts of this case the court is respectfully referred to the following: Ferguson v. Davol Mills, 2 Brewst. 314; Laughman's App., 128 Pa. 1; Hoyt v. Hoyt, 143 Pa. 623; Dixon Crucible Co. v. Guggenheim, 2 Brewst. 321; Colton v. Thomas, 2 Brewst. 308; Crawshay v. Thompson, 4 Man. & Gr. 357; Gillis v. Hall, 2 Brewst. 342; Ayer v. Hall, 3 Brewst. 509; Van Stan's Stratena Co., Ltd., v. Van Stan, 209 Pa. 564; Fulton v. Sellers, 4 Brewst. 42.

OPINION BY HEAD, J., December 7, 1908:

In reviewing the record of an appeal from a decree in equity it is not our province to find, for ourselves, the facts from the testimony as it appears on the printed pages of the paper-books. When we have ascertained that the conclusions of

fact reached by the trial court rest upon sufficient evidence and the record discloses no manifest error in their deduction from the evidence, our duty in this respect has been fully discharged.

There was evidence that one David Carter had been engaged, for perhaps twenty-five years, in the retail shoe trade in the city of Pittsburg. That he had especially sought to secure the patronage of those who desired a comfortably fitting shoe, easy for tender feet, rather than of those who required that their footwear should conform to the latest mode of the fashion. To accomplish his purpose he selected a shoe, somewhat unusual in appearance because of its marked width across the toe; had them manufactured in such qualities of material as suited his trade; had them stamped "The Carter Shoe," and under that name extensively advertised and sold them.

When he retired from business, a few years before the filing of this bill, the plaintiffs, or one of them, secured from him such rights as he could give to continue the advertisement and sale of the same shoes marked with the same stamp and under the same name that had been used by him.

That the business, owned by the plaintiffs at the time the bill was filed, had been carried on by Hohenstein, one of them, for some years prior to 1901, in a room or rooms, on the corner of Smithfield street and Third avenue, in the city of Pittsburg. That in the spring of that year he removed to the opposite corner of the same streets, and the premises vacated by him were then occupied by the defendants, also engaged in the retail shoe trade.

There is evidence, although it is contradicted, that the defendants began to sell broad toed shoes, resembling those handled by plaintiffs, advertising them in their show windows and on the exterior walls of the building as "The Carter Shoe." The plaintiff, Hohenstein, then sought the protection of the Act of June 20, 1901, P. L. 582, and registered, as his trademark, the word "Carter," with the device described in his certificate, and upon receipt of the latter, notice was given to the defendants. The use of the public signs, already men-

tioned, was then abandoned, but the defendants continued the sale of the same shoes having first had them marked, on the ribbon or strap attached to each shoe, "The Captain Carter Foot Form Shoe." But there is evidence, although again it is contradicted, that in making sales, the employees of the defendants continued to describe and designate, to purchasers, their shoes as "The Carter Shoe." This bill was then filed.

All of these facts have been found by the learned court below, and in so far as the appellants complain of such findings, their complaint is answered by the following language taken from the opinion of Mr. Justice STEWART in the recent case of Portuondo Cigar Mfg. Co. v. Cigar Mfg. Co., 222 Pa. 116,—where the whole subject of the infringement of trademarks was extensively considered, viz.: "It may be conceded that some of the specific facts found by the court are fairly disputable; but none are without support in the evidence, certainly none which might be regarded as material. The findings with respect to those disputable are not open to review, except as manifest error is shown, and that is not the case with respect to any of them."

A consideration of the entire line of conduct pursued by the defendants, as manifested in the facts found, can hardly fail to leave the impression that they persistently sought to secure, for themselves, some of the benefits, real or fanciful, which they must have assumed attached to the use, in some form, of the word "Carter," in connection with the sale of the shoes they desired to put upon the market.

As to the law applicable to the facts found, we think it sufficient to say that, in our judgment, the opinion filed by the learned trial judge and the authorities therein cited, vindicate the conclusions he has reached and the decree he has entered. His position is still further strengthened by the following language taken from the latest utterance of the Supreme Court, in the case last cited, viz.: "The general rule is that anything done by a rival in the same business, by imitation or otherwise, designed or calculated to mislead the public in the belief that in buying the product offered by him for sale, they were buying the product of another's manufacture,

would be in fraud of that other's rights, and would afford just grounds for equitable interference."

An examination of the whole record disclosing no reversible error, the assignments must all be dismissed.

Decree affirmed.