## Standard Cigar Company, Appellant, *v.* Goldsmith.

*Trade-marks—Infringement—Accounting.*

Where the infringement of a trade-mark is not the result of mistake or ignorance of the plaintiff's right, but is born of a deliberate and premeditated plan to divert from him business and profits fairly resulting from his own skill or enterprise, the defendant will not only be enjoined from continuing the infringement, but will be compelled to account for the profits which accrued from his own deliberate wrongdoing.

Argued April 22, 1914. Appeal, No. 97, April T., 1914, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1913, No. 1,087, on bill in equity in case of Standard Cigar Company of Pittsburg v. G. Goldsmith. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Decree modified.

Bill in equity to enjoin the infringement of a trademark, and for an accounting.

MILLER, J., specially presiding, found the facts to be as follows:

1. The plaintiff, a corporation, began in the year 1905, the manufacture and sale of stogies under the name "Dry Slitz"; this name and design was duly entered and registered as a trade-mark by the Patent Office in February, 1910; since that time.it has acquired a large trade, selling in the year 1912, over 16,000,000 stogies.

2. The plaintiff put up these stogies in boxes containing 100, two packages of fifty each; the word "Dry Slitz" in script letters appears on the outside and inside of the cover and on three sides of the box; the name "Standard Cigar Company" is above the trade-mark, and "of Pittsburg" below; surrounding this name on the cover and on the three sides of the box is some ornamental or scroll work; all the lettering and scroll work above mentioned is in gilt. The packages of fifty each are inclosed in tin foil, bound at the ends with yellow ribbon; on each package is a yellow label, with a black border; in the center, in the same script, in black letters, are the words "Dry Slitz," also with the words "Standard Cigar Company" above, and "of Pittsburg" below the script letters "Dry Slitz." On the three insides of the box appear the words, "Dry Slitz 2 for 5c." This inscription becomes prominent as the packages are lessened by sales therefrom.

3. The defendant in August or September, 1912, employed an engraver, printer and a box manufacturer, with instructions, especially to the engraver and printer, to make plates and do the printing of labels as nearly similar as possible to that of the plaintiff company; he had with him and submitted to the engraver a label of the "Dry Slitz" company. In accordance with these instructions he manufactured, put into boxes and sold since the time above mentioned, when he began, something in the neighborhood of 600,000 stogies. The labels are made part hereof as taken from exhibits Nos. 1 and 4.

4. The similarity between the defendant's product and that of the plaintiff is very striking; the same style of script letter is used on the covers of the box and upon

the labels; the same method of packing in tin foil and tying with ribbons is found; the same lettering appears on the inside of the box as to the name and price; there is a slight dissimilarity in the color of the labels, that of the defendant being more nearly an orange or old gold as compared with the plaintiff's lighter yellow; the color of the letters and border is a dark blue; there is also the difference with respect to the names of the parties, the defendant using his name instead of the "Standard Cigar Company"; but in the same relative place; also in placing the word "Sweets" under "Dry" on the label instead of on the same line.  All the lettering and scroll work, the former being in similar script, are in gilt on the outside and covers of the box.

5. The uncontradicted evidence of a number of experienced retail cigar dealers is that the ordinary and usual customers buying stogies take them from the boxes in which they are exposed, open upon the counter, without much examination and in haste, and that unless such ordinary customer stops to examine with care the difference that exists between the two products, if side by side, he would be deceived in purchasing one when he meant the other; also if either box were exposed alone he would not distinguish; the evidence also is that these boxes placed side by side and looked at from a distance, denote no appreciable differences.

6. There is no evidence that these stogies have been exposed for sale side by side, or that the defendant sells to or distributes to plaintiff's customers, or to a similar class.

The court entered the following decree:

This case came on to be .heard at this term and was argued by counsel and upon consideration thereof it is ordered, adjudged and decreed as follows, viz.:

1. That G. Goldsmith, defendant, be enjoined and restrained from the use of the mark "Dry Sweets" in or in connection with the sale of his stogies.

2. That defendant account to plaintiff for all damage which plaintiff can prove by reason of the public having unwarily purchased defendant's stogies under the name of "Dry Sweets," which it believed were "Dry Slitz."

3. That defendant pay the costs of this proceeding.

*Error assigned* was the decree of the court.

*J. Rodgers McCreery, L. S. Levin* and *W. B. Rodgers,* for appellant.—The extent of the wrong, prima facie, is the amount of the deceptive goods which the wrong-doer succeeded in disposing of: Hart v. Ten Eyck, 2 Johns. Ch. (N. Y.) 62; Westinghouse Elec., etc., Co. v. Wagner, 225 U. S. 621; Saxlehner v. Eisner, 138 Fed. Repr. 22; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169; Graham v. Plate, 40 Cal. 593; Van Stan, etc., Co. v. Van Stan, 209 Pa. 564; Avery v. Meikle, 85 Ky. 435.

No printed brief for appellee.

OPINION BY HEAD, J., July 15, 1914:

Every substantial ingredient that demanded the decrees in Hohenstein v. Perelstine, 37 Pa. Super. Ct. 540, and Van Stan, etc., Co. v. Van Stan, 209 Pa. 564, has been found by the learned judge below, on ample evidence, to be present in the case at bar. It would not be easy to imagine a more deliberately planned scheme to pirate the trade-mark of another than we have before us. We can see no sound reason why the decree in this case should fall short of furnishing to the plaintiff appellant the same measure of relief that was accorded in the cases cited. In Hohenstein v. Perelstine, supra, the case was heard by the same learned judge who disposed of the one at bar. In that case he made a decree not only restraining the defendant from the further commission of the wrongful acts complained of, but also compelling the defendant to account for "all shoes sold under the name of the Captain Carter

Foot Form Shoe or of the Carter Shoe." This court affirmed that decree. In Van Stan Co. v. Van Stan, supra, the case of the defendant was, in one respect at least, susceptible of some justification or excuse which cannot be urged in favor of the defendant here. In that case the learned judge below refused the relief prayed for and dismissed the bill. The Supreme Court set aside that decree, granted the injunction that had been prayed for and further directed "that defendant account for in the court below any profits made by him in the wrongful use as herein set out of said plaintiff's trade-mark."

In cases where the infringement complained of was not the result of mistake or ignorance of the plaintiff's right, but was born of a deliberate and premeditated plan to divert from him business and profits fairly resulting from his own skill or enterprise, it appears to be regarded as no more than right that the defendant should be compelled to account for the profits which accrued from his own deliberate wrongdoing. Such also appears to be the practice in the federal courts. The principle on which such an accounting ought to be required and is usually decreed is well stated by the Supreme Court of California in Graham v. Plate, 40 Cal. 593: "No one will deny that on every principle of reason and justice the owner of the trade-mark is entitled to so much of the profit as resulted from the use of the trade-mark. The difficulty lies in ascertaining what proportion is due to the trade-mark and what to the intrinsic value of the commodity, and if this cannot be ascertained with any reasonable certainty, it is more consonant with reason and justice that the owner of the trade-mark should have the whole profit than that he should be deprived of any part of it by the fraudulent act of the defendant. It is the same principle which is applicable to a confusion of goods." If one may deliberately and designedly prepare and execute a plan to infringe upon the trade-mark of another without running any greater

risk than to be stopped at some time, by an injunction, from the further use of his fraudulent scheme, the law will not have the potency it should have in preventing the commission of unlawful acts.

We are of opinion, therefore, that the decree entered by the learned court below should be modified by striking out the second paragraph thereof and inserting in substitution therefor the following: "That defendant account for any profits made by him in the wrongful use, as herein set out, of said plaintiff's trade-mark." As thus modified, the decree, which is right in all other respects, is affirmed. The costs of this appeal to be paid by the appellee, and the record is remitted to the court below for further proceedings.