Risser v. Mellott et al.

*Reiley & Reiley*, for plaintiff.

*B. F. Madore*, for defendants.

WRIGHT, P. J., September 28, 1942.—This equity case was heard upon bill and answer on June 16, 1942, but was not submitted to the court for determination until September 14th, as that length of time was allowed at the request of counsel for the preparation and filing of requests for findings of fact and conclusions of law. These requests as submitted by counsel may be treated merely as suggestions and the chancellor may state his findings of fact and conclusions of law in his own language, which is what we propose to do: Brener v. Philadelphia et al., 305 Pa. 182. The form of our adjudication is prescribed by Equity Rule 67.

*Pleadings and issues raised thereby*

P. N. Risser, plaintiff, filed a bill of complaint asking that J. M. Mellott and Sadie F. Mellott, defendants, be enjoined and restrained from using the name "New Motor Court" and from carrying on business under that name. A preliminary injunction was granted and subsequently dissolved because the injunction affidavits were not in conformity with the Equity Rules. Defendants filed an answer and subsequently, by leave of court, an amended answer. Testimony was taken and counsel for the parties have submitted their requests for findings of fact and conclusions of law. The issues raised by the pleadings are: (1) Does failure to file a certificate under the Fictitious Names Act of June 28, 1917, P. L. 645, as amended, operate as a bar to equitable relief; (2) does the trade name adopted by defendants actually infringe upon that of plaintiff; (3) can the operator of a business establishment exclusively appropriate the single word "new" as a portion of his trade name; (4) is plaintiff entitled to equitable relief against defendants under all the circumstances of this case. Two of these issues, the first and third, raise interesting legal questions which, so far as we can ascertain, have never been judicially determined. The other two issues are dependent for their solution upon the application of established principles to our interpretation of the factual situation.

*Findings of fact*

1. For many years a hotel had been operated on the north side of the Lincoln Highway at the east end of Bedford Borough under the name of Elmwood Inn.

2. Prior to the year 1940, J. M. Mellott and Sadie F. Mellott purchased a plot of ground on the south side of the Lincoln Highway, opposite the Elmwood Inn property, for the purpose of improving the plot with tourist cottages.

3. P. N. Risser purchased the Elmwood Inn property in the month of August 1940, for the purpose of operating it as a hotel with tourist cottages in connection therewith.

4. The cottages on the Mellott property were completed on April 7, 1941, and on that date the establishment was opened under the name of "Bedford Motor Court Cottages".

5. The Mellott cottages were constructed entirely of new materials.

6. The cottages on the Risser property were completed early in June 1941, and at that time the establishment was opened under the name of "Elmwood Inn and New Motor Court".

7. The cottages on the Risser property were constructed in part of secondhand or used materials.

8. Certain of the advertising signs erected on plaintiff's property contained merely the words "New Motor Court", the word "new" appearing in orange script lettering.

9. Defendants promptly objected to the use by plaintiff of the term "motor court".

10. The entrance to the Elmwood Inn property was originally east of the entrance to the Mellott property but, after the commencement of operations by plaintiff, this entrance was moved west to a point directly opposite the entrance to the Mellott property.

11. Plaintiff erected on his property a main office sign similar to the sign which had been previously erected by defendants on their property.

12. In August and September 1940 plaintiff erected gables in the roofs of certain of his cottages, which gables were similar in appearance to the gables in the roofs of the cottages on the Mellott property.

13. Early in the month of October 1941, and just prior to the filing of this bill, defendants changed certain of their signs by adding the word "new", and in some instances the appearance of this word was similar

in color and script lettering to the same word in plaintiff's signs.

14. Viewed as a whole, the signs used by plaintiff and the signs used by defendants are not so similar as to mislead or deceive tourists of average intelligence.

15. Plaintiff never complied with the requirements of the Fictitious Names Act of 1917, as amended.

16. On October 6, 1941, defendants filed a certificate under the said act designating the name of their business operation as "Bedford New Motor Court Cottages".

## Discussion

1. The Fictitious Names Act of 1917, as amended, provides that no individual shall conduct any business in this Commonwealth under an assumed or fictitious name unless he shall first file a prescribed certificate in the office of the Secretary of the Commonwealth and in the office of the prothonotary of the court of common pleas. This act was intended to protect persons giving credit in reliance upon an assumed or fictitious name and definitely to establish the identity of the individuals owning the business for the information of those who might have dealings with the concern. It is a penal statute and should be so construed as not to extend its operations beyond the purpose for which it was enacted: Lamb v. Condon et al., 276 Pa. 544. In that case a real estate broker, who was trading under an unregistered fictitious name, but who had not misled or injured his employer by the use of such name, was permitted to recover his commissions in an action of assumpsit. In the case of Rome S. & S. Station v. Finch, 111 Pa. Superior Ct. 226, in refusing to strike off a judgment by confession on the ground that the plaintiff was using an unregistered fictitious name, the Superior Court emphasized the fact that it did not appear that defendant was deceived in any manner. The Supreme Court has ruled in a trespass action that a person who participates in registering

as a partner under the act and who subsequently withdraws from the partnership without canceling the registration may nevertheless deny the continued existence of the partnership: Rowland v. Canuso et al., 329 Pa. 72. In the case of Potter v. Osgood, 79 Pa. Superior Ct. 397, plaintiff had registered his tradename before bringing suit, but it appeared that defendant had previously registered the alleged conflicting name. The Supreme Court held that plaintiff should not be barred from equitable relief because of his failure to register first. In the case before us plaintiff did not register at all, but there is no evidence that defendants were thereby misled, injured, or deceived. We conclude, therefore, that defendants should not be permitted to take advantage of this technical oversight so as to prevent plaintiff from availing himself of the process of the equity court.

2. It is well settled that courts of equity will protect trade names. An established trade name is an assurance to the public of the quality of the service and a pledge of the businessman's integrity. Not only should the individual owner be protected against injury to his goodwill, but the members of the general public are also entitled to protection. The test to be applied is the tendency of the imitation or infringement to mislead and deceive. To entitle the owner of a trade name to equitable relief it must appear that the infringing name is so similar as to deceive persons of average intelligence: Stroehmann Brothers Co. v. Manbeck Baking Co., 331 Pa. 96. Relief is granted where the intention of the infringing user is to procure an unfair and fraudulent share of his competitor's business, or where irrespective of intention the effect of the infringing use is to produce confusion in the public mind: American Clay Mfg. Co. v. American Clay Mfg. Co., 198 Pa. 189; Suburban Press v. Philadelphia Suburban Publishing Co., 227 Pa. 148. Nor is it necessary for plaintiff to show actual loss or damage: Juan F. Portu-

ondo Cigar Mfg. Co. v. Vicente Portuondo Cigar Mfg. Co., 222 Pa. 116; Hohenstein v. Perelstine, 37 Pa. Superior Ct. 540. There is no evidence in this case that, by using the word "new", defendants intended to or did procure an unfair and fraudulent share of plaintiff's business. Hence plaintiff's case must rest upon the proposition that the effect of the use of the word by defendants was to produce confusion in the public mind. We have found as a fact that, viewed as a whole, the signs used by the parties are not so similar as to deceive tourists of average intelligence and, therefore, conclude that the competing trade names are not confusingly similar within the meaning of the law.

3. In considering this issue, plaintiff's case must rest upon his claim to the single word "new". He cannot restrain the use of the words "motor court", as defendants adopted that term first. Plaintiff's contention is that by depicting the word "new" in a particular color of script lettering and by using it in such fashion for a period of several months he thereby acquired a property right in the word in connection with his trade name. The word "new" is of common usage, indicating quality. It is defined by Webster to mean something having existed but a short time, something recent, as opposed to old. We do not believe that plaintiff intended to deceive tourists or to take advantage of competitors by the use of this term. His position is that by taking secondhand or used materials, reconditioning them, and adding some new materials, he created something new. Certainly his cottages were new in the sense that they had not existed before. However, as a primary proposition it is impossible exclusively to appropriate a word open to description of quality or character: Consolidated Ice Co. v. Hygeia Distilled Water Co., 151 Fed. 10. To acquire the right to the exclusive use of a name it must appear that it was adopted for the purpose of identifying origin or ownership: Columbia Mill Co. v. Alcorn, 150 U. S. 460. The purpose of a trade name is to indicate the source of the

product or service, and thus to distinguish it in the market from other articles or services of a similar nature: Appeal of Laughman et al., 128 Pa. 1. It is sometimes possible, however, to restrain the use of a descriptive word by a competitor, provided that because of long-continued usage the words has acquired a secondary meaning by which it has come to denote plaintiff's product or service: Sleight Metallic Ink Co. v. Marks, 52 F. (2d) 664; Barton et al. v. Rex-Oil Co., Inc., 2 F. (2d) 402. A name, although arbitrary and fanciful, may in the process of time by association with a particular product or service come to point unmistakably to the origin thereof, although not primarily or immediately connected with the name of the owner or place of his business: E. T. Fraim Lock Co. v. Shimer, 43 Pa. Superior Ct. 221. The general subject of competing trade names has been recently discussed at length by the Supreme Court in the case of Quaker State Oil Refining Co. v. Steinberg et al., 325 Pa. 273. It cannot be seriously contended that the word "new" immediately or primarily suggests origin or ownership. And, while a period of several months does not appear to be such long-continued user as is contemplated by the decisions, we cannot perceive how the single word "new" could ever acquire a secondary meaning as denoting the origin or ownership of a particular product or service, no matter how long continued might be its association therewith. It has been held that a particular color may not be monopolized: Taylor v. Bostick, 299 Fed. 232; and we cannot judicially countenance a monopoly on the use of script lettering as opposed to printed lettering. As we view the law, and we so rule, the word "new" standing alone cannot be exclusively appropriated as part of a trade name, either primarily or by virtue of secondary meaning because of continued association with a product or service, even though depicted in a particular color of script lettering.

4. He who seeks equity must do equity. This time-honored maxim does not require the citation of supporting authority. The evidence discloses that the original relationship between these competitors was of a friendly nature. When their cottages were fully occupied by tourists defendants would send surplus customers across the highway to plaintiff's establishment. Plaintiff was the first to disturb the existing calm by changing his entrance, by erecting a similar main office sign, by constructing similar gables on his cottages and by adopting the term "motor court" which was being used by defendants as a part of their trade name. In answering defendants' objection to his use of this term, plaintiff replied that the words "motor court" were of common usage and could not be appropriated as a portion of a trade name belonging to one business establishment only. When asked by counsel at the time of hearing what monopoly he had on the word "new", plaintiff replied that he had just as much monopoly on that word as defendants had on the word "Bedford". His position was that since he had respected defendants' use of the word "Bedford" he should be protected in his use of the word "new", which contention, of course, entirely overlooked the fact that he had not respected defendants' use of the term "motor court". All this may have been legally permissible. However, we believe that when defendants proceeded to add the word "new" to certain of their signs it was primarily as a matter of self-defense to indicate in all fairness that their cottages were actually constructed of new materials. We do not hold that defendants were entirely blameless in using a similar color of script lettering even though this may in turn have been legally permissible. We do feel, however, that neither the purpose nor the result of this action was to deceive the public or to defraud plaintiff. It is evident that a certain amount of turmoil exists at this location. However, we are of the opinion that any resulting confusion in the minds

of tourists is due not to similarity of trade names, but rather to the adjacent location of these business establishments, the close proximity of their entrances, the similar appearance of their cottages, and particularly to the extreme competitive activity of the parties. We conclude that plaintiff, who set the forces of tumult in motion, is not entitled to the protection of the equity court against conduct of defendants which at its worst was merely retaliation and which contributes but slightly, if at all, to the general discord which has been the unfortunate result of this whole situation.

### Conclusions of law

1. Failure to file a certificate under the Fictitious Names Act of June 28, 1917, P. L. 645, as amended, is not a bar to equitable relief.

2. Equity will not enjoin the use by a business competitor of a portion of plaintiff's trade name where, as a matter of fact, the alleged infringement as a whole is not so similar as to deceive persons of average intelligence.

3. The operator of a business establishment cannot exclusively appropriate the single word "new" as a portion of his trade name.

4. Plaintiff is not entitled to equitable relief against defendants under all the circumstances of this case.

### Decree nisi

And now, to wit, September 28, 1942, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that the bill be dismissed at the cost of plaintiff. Unless exceptions are filed within ten days after notice of the entry thereof, this decree nisi shall be entered as the final decree.