## GAMLEN CHEMICAL CO. v. GAMLEN et al.

### Civ. A. No. 7232.

United States District Court
W. D. Pennsylvania.

July 29, 1948.

626

Walter J. Blenko (of Stebbins, Blenko & Webb), of Pittsburgh, Pa., for plaintiff.

Edgar W. McCallister (of Green, McCallister & Miller), and William A. Blair (of Griggs, Moreland, Blair & Douglass), both of Pittsburgh, Pa., for defendant.

GOURLEY, District Judge.

This proceeding comes before the Court on plaintiff's motion for a preliminary injunction. Jurisdiction of the Court is invoked by virtue of Title 28 U.S.C.A. § 41, Subd. (11), Judicial Code, § 24; 28 U.S. C.A. § 112, Judicial Code § 51. Under the allegations of the complaint, jurisdiction also exists by virtue of the Judicial Code, 28 U.S.C.A. § 41, Subd. (7).

It is the contention of the plaintiff that if a preliminary injunction is not granted against the defendant, the plaintiff will suffer an irreparable loss and damage from interference with rights previously enjoyed. The plaintiff further contends that a preliminary injunction should be issued in which the defendant, his agents, servants, employees, and all others acting by or under his authority are restrained until final disposition of the issues which exist:

(a) from using the name "C. Gamlen Company", or any other name or style confusingly similar to plaintiff's corporate name, in connection with the manufacture and sale of cleaning compounds, solvents, rust preventatives, protective coatings and detergents, or any of them;

(b) from selling or in any way disposing of and from advertising or offering for sale cleaning compounds, solvents, rust preventatives, protective coatings or detergents, or any of them, labeled or having printed thereon or connected therewith the word "Gamlen," either alone or in combination with other words or characters;

(c) from using in any manner any of the secret code books or formula books of the plaintiff, or any copies thereof, or any of the subject matter contained therein;

(d) from using in any way any of the books and records of the plaintiff or any other data of the plaintiff pertaining to sales, salesmen, distribution, prices, discounts and manufacturing or other information pertinent to the products of the plaintiff or its operations that were taken from the plaintiff, or any copies thereof, or any of the subject matter contained therein;

(e) from in any manner whatsoever representing himself or the business he is conducting as being associated or connected with the plaintiff, or deriving from it, or situated to serve the public by reason of the defendant's knowledge of or former connection with the plaintiff;

(f) from enticing away the plaintiff's employees, agents, representatives or customers or any of them.

The Gamlen Company, hereinafter referred to as "plaintiff", has its principal place of business in San Francisco, California, and is duly authorized to do business in the Commonwealth of Pennsylvania. Plaintiff maintains offices, a warehouse and manufacturing plant within the Western District of Pennsylvania.

The defendant, Harry Cuthbert Gamlen, doing business under the name and style of "C. Gamlen Company," hereinafter referred to as "defendant," is a citizen and resides within the Western District of Pennsylvania.

The defendant is a son of Harry Gamlen, President of the plaintiff corporation, is the owner of one-third of the stock in said corporation, had acted as Vice President, Secretary and Treasurer until on or about April 15, 1948, and still remains a director of the plaintiff corporation. He has received no notice of a directors' meeting

since severing his active association with the plaintiff corporation.

During the year 1932, Harry Gamlen became associated with a brother at San Francisco, California, in the business of manufacturing and selling a chemical compound which was devised and perfected for use in steam boilers to eliminate combustion deposit and slag on tube surfaces and refractories. Although differences arose between Harry Gamlen and his brother, Harry Gamlen became the sole proprietor of the business and operated under the name and style of "Gamlen Chemical Company."

A short time after Harry Gamlen became the owner of said business, he invited his son, who is the defendant, to enter into a partnership with him and gave the defendant a one-third interest in said business. At that time the defendant had no education or training as to the particular type of work in which his father was engaged. Sometime thereafter James E. Gamlen, a younger son of Harry Gamlen and brother of the defendant, was made a member of the partnership without any reduction being made in the defendant's interest of one-third, and said business was continued on without interruption and generally known as "the Gamlen partnership."

In 1939 the defendant was placed in charge of the Eastern Division of said company, and, as a partner and officer of the plaintiff, had complete knowledge of and direct contact with all of the plaintiff's representatives and salesmen in said district, knew all the names of plaintiff's customers, and had custody of the records relating thereto. In addition thereto, defendant had general knowledge and information relating to the operation of the plaintiff corporation in the United States and Canada.

A corporation was formed in the State of California on January 1, 1946, at which time the plaintiff corporation succeeded to the business, goodwill, trade secrets, trademarks and other assets of the Gamlen partnership and has continued said business until the present time. Eighteen hundred (1800) shares of capital stock were issued and the defendant is the owner of six hundred (600) shares thereof, correspond-

ing to his one-third interest of the partnership. The other shares (save for qualifying shares) were and are held by Harry Gamlen and his son, James E. Gamlen. In addition to the stock interest which the defendant held in the plaintiff corporation, he received an agreed salary for his services as an officer and director.

As the business grew, other chemical products, which were useful in industrial and maritime fields, were devised or created by one member or the other of said partnership. The compositions and chemicals constituting the chemical products which were sold were regarded as trade secrets and maintained as such by the plaintiff, and were recorded in formula books which were kept confidential and which were known only to the members of the partnership. The various ingredients were specified by code numbers instead of by their scientific or chemical names, and a great number of the employees, other than the members of the partnership, were bound by written secrecy agreements not to divulge any information or knowledge of a secret or confidential nature relative to the business of the Gamlen Chemical Company obtained or acquired by the employees by reason of their business connection with the company. The defendant, as Vice President of the plaintiff corporation, as part of his duties had occasion to have many of these agreements executed.

Sales offices were opened in the principal cities of the United States, and a subsidiary company was organized in Canada.

Differences arose between Harry Gamlen, President of the plaintiff company, and the defendant as to the operation and management of said company and as to the authority of James E. Gamlen, a younger son of the plaintiff. It was impossible to adjust the differences and, as a result thereof, on April 15, 1948 the defendant severed all connection with the plaintiff company, other than retaining his office of director which has not been resigned to this date.

A short time thereafter the defendant commenced business within the Western District of Pennsylvania under the ficti-

tious name and style of "C. Gamlen Company." The nature of the business set forth in said registration was—the manu-facture and sale of cleaning compounds, solvents, rust preventatives, protective coatings, detergents, paints and kindred items.

It is self-evident the business of the defendant is similar to and competitive with that which had been conducted by the plaintiff for over sixteen years.

The plaintiff contends:

(a) The defendant has violated his fiduciary obligations to the plaintiff, has acted fraudulently and in violation of his duties to exercise good faith toward the stockholders of the plaintiff, has sought to derive personal profit and advantage to the detriment of the plaintiff corporation and its stockholders by reason of the advantageous position held by him, has acted in a manner contrary to commercial good faith and to the normal and honorable development of industry and business activities, and has competed unfairly with the plaintiff in the following respects:

(1) While still actively serving as an officer of the plaintiff corporation, he planned and at least partially completed the organization of his competing business.

(2) He has unlawfully taken and utilized the trade secrets and confidential records of the plaintiff.

(3) In building up his competing organization, he has hired employees of the plaintiff who were bound by secrecy agreements, and has utilized their services in a manner violative of those agreements.

(4) He has traded upon the reputation and good will of the plaintiff and diverted business from the plaintiff to himself by utilizing the plaintiff's customer lists and his knowledge of the plaintiff's prices and business practices.

(5) He has adopted the fictitious name and style of "C. Gamlen Company" in close imitation of the plaintiff's corporate name and has used the name "C. Gamlen Company" in printed matter in a way calculated to minimize the prefix "C" and to emphasize the words "Gamlen Company" so as to create confusion in the trade.

(6) On May 19th, 1948, he registered the name "C. Gamlen Company" under the Fictitious Names Act of Pennsylvania with the Prothonotary of Allegheny County, Pennsylvania, and with the Department of State of the Commonwealth of Pennsylvania, his stated purpose being "The manufacture and sale of all kinds of cleaning compounds, solvents, rust preventatives, protective coatings, detergents, paints, and kindred items" and has thereby situated himself to do business under a name and style not heretofore customarily used by him in his business or personal affairs and closely imitative of the plaintiff's corporate name. The plaintiff has been advised by the Prothonotary of Allegheny County and by the Department of State of the Commonwealth that it is not within their powers to remove said registrations because of any potential damage to the plaintiff and that that is a function of a Court of Equity.

(7) He has used business forms, product labels and a general dress of goods closely imitative of the plaintiff's business forms, product labels, and dress of product, and calculated to cause confusion in trade.

(8) He has copied or imitated the plaintiff's products and has offered them to members of the public known to him, by reason of his fiduciary relationship with the plaintiff, to be the plaintiff's customers.

(9) In marketing his products, he has used the plaintiff's trade-mark "Gamlen" on and in connection with his goods and in his business generally and has infringed plaintiff's trade-mark rights.

(10) He has infringed upon copyrights of plaintiff.

(b) That the defendant has infringed on trade-marks of the plaintiff company in that:

(1) When Harry Gamlen commenced his business he adopted the word "Gamlen" as a trade-mark and when he entered into partnership with the defendant, he turned over all of the business, including the good will thereof and the trade-mark "Gamlen," to the Gamlen partnership. The Gamlen partnership made substantial expenditures of time, money and effort in acquainting the trade with

the origin and excellence of its products sold under the trade-mark "Gamlen" and the mark became distinctive of the goods of the Gamlen partnership in commerce.

(2) The Gamlen partnership enjoyed substantially exclusive and continuous use of the word "Gamlen" as a trade-mark in intrastate and interstate commerce from the inception of the Gamlen partnership in 1933 up to January 1, 1946, when the plaintiff corporation succeeded to its business.

(3) Since January 1, 1946 the plaintiff, as the successor to the business, good will and trade-mark rights of the Gamlen partnership, has continued to make substantial expenditures of time, money and effort in advertising the trade-mark and exploiting products sold under it, and since January 1, 1946 the trade-mark "Gamlen" has been distinctive of the plaintiff's goods in interstate and intrastate commerce. Up until the infringing acts of the defendant herein complained of, the plaintiff continued to enjoy substantially exclusive and continuous use thereof as a trade-mark and, save for the infringing acts of the defendant, would continue to enjoy substantially exclusive use thereof.

(4) The defendant, as a partner in the Gamlen partnership, was an assignor of and received good and valuable consideration for the sale of the trade-mark "Gamlen," together with the good will in the business thereof, to the plaintiff. The plaintiff is informed by its counsel, and therefore avers, that by reason of these facts the defendant is estopped from denying the validity of the trade-mark "Gamlen" or the exclusive rights of the plaintiff therein.

(5) The defendant has used the trade-mark "Gamlen" on his goods in interstate and intrastate commerce and in the conduct of his business generally. Moreover, he has caused the trade-mark "Gamlen" to be printed and applied to his products in a form and style closely imitative of the form and style currently used by the plaintiff. The plaintiff is informed and believes, and therefore avers, that in order to imitate the form and style of the plaintiff's trade-mark and sales literature

incorporating it, the defendant, taking advantage of knowledge obtained by him as an officer of the plaintiff, has employed the advertising agent and printer who implemented the form and style of trade-mark representation and advertising used by the plaintiff.

(c) That the defendant has infringed on copy-rights of the plaintiff company in that:

(1) Prior to May 9, 1945 the Gamlen partnership caused to be prepared and became the proprietor of a new and original business form entitled "Instructions for the Application of Gamlenlite Metal Replacement." On or about May 9, 1945, it caused the same to be first published with the statutory notice of copyright thereon, "copyright 1945 by Gamlen Chemical Co." When the plaintiff took over the business of the Gamlen partnership it became, and now is, the owner of the copyright. Although the defendant was charged with the responsibility for depositing copies of the copyrighted work with the Librarian of Congress, he appears not to have done so, but the plaintiff is depositing copies thereof with the Register of Copyrights, Library of Congress, in accordance with the Copyright Law of the United States. Said business form was prepared, published and copyrighted under the authority and at the direction of the defendant while acting as a partner in the Gamlen partnership. Since April 15, 1948 the defendant has infringed the plaintiff's aforesaid copyright by publishing and using a business form entitled "Instructions For Use of Gamlen Combustion Deposit and Slag Remover."

The defendant contends:

(a) That the use of the words "C. Gamlen Company" in the marketing of his product is not in close imitation of the plaintiff's corporate name.

(b) That the name and use of "C. Gamlen Company" will not create or cause confusion in trade.

(c) That he did not complete or partially complete the organization of his business while serving as an officer of the plaintiff company.

(d) That he has not traded upon the reputation or goodwill of the plaintiff.

(e) That he has not taken or utilized trade secrets or records, or customer lists of the plaintiff company.

(f) That he has not hired employees of the plaintiff that were bound by secrecy agreements, nor has he utilized their services in a manner violative of those agreements.

(g) That he has not used business forms, product labels and a general dress of goods closely imitative of the plaintiff's business forms, product labels, and dress of product, and calculated to cause confusion in trade.

(h) That he has not copied or imitated the plaintiff's products nor has he offered them to members of the public known to him, by reason of his fiduciary relationship with the plaintiff, to be the plaintiff's customers.

(i) That in marketing his products, he has not used the plaintiff's trade-mark "Gamlen" on and in connection with his goods and in his business generally and has not infringed plaintiff's trade-mark rights.

(j) That he has not infringed upon copyrights of plaintiff.

(k) That the word "Gamlen" was not used as a trade-mark by either the partnerships or the corporation plaintiff which succeeded to the rights thereto.

(l) That the defendant has not by any act or deed assigned or otherwise alienated his rights to employ or use the name "Gamlen" in the conduct of his business.

(m) That the businesses of the plaintiff company and the defendant are both peculiar in that trade served by them is a special trade, and that prospective buyers are not depended upon or influenced by trade-marks, trade-names, descriptive or laudatory pamphlets, bulletins or literature.

(n) That sales made by both the plaintiff and defendant are a result of personal contact with the customer or an individual representing the customer, and is made under conditions such that no confusion can arise as to the identity of the person or company making the sale.

(o) That it would be impossible to "palm off" the goods or products of the defendant for those of the plaintiff.

(p) That all pamphlets, bulletins or printed directions relating to the manner of using the purchased goods are usually and normally delivered after the delivery of the goods.

(q) That the large majority of sales made by both the defendant and plaintiff are result of personal friendship or acquaintanceship, and that no confusion can exist as to the origin of the goods or the identity of the owner.

■ In connection with the cause of action which relates to the copyright and trade-mark laws of the United States, the applicable law is that of the United States Courts, where inconsistent with or contrary to Pennsylvania law.

■ As to all other phases of the action federal jurisdiction is invoked solely on the basis of diversity of citizenship of the party litigants; there is no independent federal question involved before the Court as to the relief which is claimed. As a result thereof, the substantive law to be applied is the law of the Commonwealth of Pennsylvania. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Mitchell v. Ottinger, 3 Cir., 105 F.2d 334; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Klaxon Company v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, cert. denied. 318 U.S. 779, 63 S.Ct. 855, 87 L.Ed. 1147; Adam Hat Stores, Inc., v. Lefco, 3 Cir., 134 F.2d 101.

In cases involving unfair competition, whether the local or the federal law is to be applied is not always of particular importance for the principles as announced by the state courts usually do not conflict with those laid down by the Federal courts. This laudable condition appears to exist in the Commonwealth of Pennsylvania. Coca-Cola Co. v. Busch, D.C.E.D.Pa. 44 F.Supp.

405; Safeway Stores, Inc., v. Sklar, 75 F. Supp. 98, 104.

■ The granting of a preliminary injunction is an exercise of a very far reaching power, never to be indulged in except in a case clearly demanding it. New York Asbestos Mfg. Co. v. Ambler Asbestos Air Cell Covering Co., 3 Cir., 102 F. 890; Barker Painting Co. v. Brotherhood of Painters, 3 Cir., 15 F.2d 16; Murray Hill Restaurant v. Thirteen Twenty-One Locust, 3 Cir., 98 F.2d 578; Warner Bros. Pictures v. Gittone, 3 Cir., 110 F.2d 292, 293.

■ To justify the granting of such an injunction, there must be a showing of irreparable injury during the pending of the action. American Mercury v. Kiely, 2 Cir., 19 F.2d 295; Murray Hill Restaurant v. Thirteen Twenty-One Locust, supra; Warner Bros. Pictures v. Gittone, supra.

It must also appear that the injunction is required to preserve the status quo pendente lite. Warner Bros. Pictures v. Gittone, supra.

■ The office of a preliminary injunction is, therefore, confined to maintain the existing status until the merits of the controversy can be fully heard and determined. It cannot be used to subvert the existing status, or to take property out of the possession of one party and put it into the possession of the other. Mahanoy Township Authority v. Draper et al., Appellants, 356 Pa. 573, 576, 52 A.2d 653.

■ A preliminary injunction cannot be mandatory except in the rarest of cases since a direction or command that certain acts be done or undone does not maintain the status quo. Audenried v. Philadelphia & Reading R.R. Co., 68 Pa. 370, 8 Am.Rep. 195.

■ It is the province of a preliminary injunction, however, to preserve pendente lite the last actual peaceable non-contested status which preceded the controversy at issue. Irreparable loss resulting from refusal to accord the plaintiff a new status, as distinguished from interference with rights previously enjoyed, does not furnish the basis for the granting of a preliminary injunction. Warner Bros. Pictures v. Gittone, supra; Fredericks v. Huber et al., Appellants, 180 Pa. 572, 37 A. 90.

■ Equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status though he succeeded in making the change before the chancellor's hand actually reached him. Fredericks v. Huber et al., Appellants, supra.

Fiduciary Relationship of Defendant **to** Plaintiff Corporation—

The fiduciary obligations of the defendant in this case, as a director of the plaintiff corporation, seem to be the same whether governed by the law of California, the state of the Plaintiff's incorporation, or the law of Pennsylvania, where the cause of action arises, since both states apply the same legal principles.

■ It should be unnecessary to state the principles of law and equity governing the duties owed to a corporation by its directors and officers for those principles have been repeatedly enunciated. Suffice it to say that it is well settled, and indeed is embodied in the statutory law of the Commonwealth that officers and directors are deemed to stand in a fiduciary relation to the corporation. 15 Purdon's Penna. Statutes Annotated, § 2852—408. They must devote themselves to the corporate affairs with a view to promote the common interests and not their own, and they cannot, either directly or indirectly, utilize their position to obtain any personal profit or advantage other than that enjoyed also by their fellow shareholders. Bird Coal & Iron Co. v. Humes, 157 Pa. 278, 287, 27 A. 750, 752, 37 Am.St.Rep. 727; Porter v. Healy, 244 Pa. 427, 435, 436, 91 A. 428, 431. In short, there is demanded of the officer or director of a corporation that he furnish to it his undivided loyalty. If there is presented to him a business opportunity which is within the scope of the corporate activities and of present or potential advantage to it, the law will not permit him to seize the opportunity for himself; if he does so, the corporation may elect to claim all of the benefits of the transaction. Nor is it material that his dealings may not have caused a loss or been harmful to the corporation; the test of his liability is whether he has unjustly gained enrich-

632

ment. Bailey v. Jacobs, 325 Pa. 187, 194, 189 A. 320, 324, 19 C.J.S., Corporations, § 761, sub-para. b.; Angelus Securities Corporation v. Ball, 20 Cal.App.2d 423, 67 P.2d 152.

The plaintiff argues that the defendant's fiduciary responsibility, under the facts in this case, is augmented since the partnership of which he was formerly a member was absorbed by the plaintiff corporation.

■ Although the trade-name may not be mentioned in the sale of a business taken over as a going concern, a deed conveying trade-marks, patent-rights, trade-rights, good will, property and assets of every name and nature is broad enough to include the trade-name under which the vendor corporation and its predecessors had achieved a reputation. Herring-Hall-Marvin Safe Co. v. Hall's Safe Company, 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616.

■ However, since there was not an express stipulation or agreement made by the defendant to not use his name in a competing business, the assignment of his interest in the partnership to the plaintiff corporation, together with the trade-name and good will, does not in itself preclude the defendant from using his name in a competing business. Ralph Brothers Furniture Co., Appellant v. Ralph et al., 338 Pa. 360, 12 A.2d 573.

■ An individual is entitled to the use of his own name in his business unless he has by contract deprived himself of that right, even though he may interfere with and enjoy the business of another bearing the same name, *providing he does not resort to any artifice, scheme or contrivance to mislead the public as to the identity of the established owner or business, and produce injury to the other beyond that which results from similarity in the names.* (Italics supplied.) John H. Gates, t/a John H. Gates Coal Co. v. Gates Coal Co. Inc., 114 Pa.Super. 157, 158, 174 A. 3; Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co., 198 Minn. 276, 269 N.W. 633, 107 A.L.R. 1276.

The general principles controlling cases of this character are well settled. The difficulty is to apply them to the particular facts in a case. If the defendant did not bear the family name of "Gamlen," there would be no doubt that his use of said name in connection with his business would be prohibited. This would be upon the ground that the use of such an arbitrary and meaningless word applied to the business could be only with dishonest intent to derive some of the benefits resulting from the name of "Gamlen" products.

■ It is well settled that a newcomer may be compelled to add some distinguishing words if he chooses to use even his own surname to conduct his business. Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322; L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 94, 35 S.Ct. 91, 59 L.Ed. 142; John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 85 F.2d 586.

■ No testimony has been presented to show that plaintiff has suffered any present financial loss as a result of the defendant's business venture. Every person is entitled to engage in such business activity as he chooses as long as he does so within existing law and applicable equitable restrictions. The actions of the defendant as to any breach of his fiduciary relationship to the plaintiff and its stockholders does not, in my judgment, in itself require the granting of preliminary injunctive relief although said facts will be considered in passing upon the other questions which exist.

Unfair Competition—Trade Name and Copyright Infringement—

■ It is difficult to dissociate the charges of trade-mark, copyright or trade-name infringement and unfair competition. The law is well settled, however, that the court will retain jurisdiction to determine the question of unfair competition where no trade-mark infringement is found. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. The law of trade-marks is but a part of the broader law of unfair competition—the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another. Amer-

ican Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317.

A trade mark protects its owner not only to its use upon the articles to which he has applied it, but upon such other goods as might naturally be supposed to come from him. It is the owner's symbol of his good will, a trade asset of real value. It is his commercial signature that sells his goods. Where the goods of the trader have become public not only because of their increasing worth but also by reason of the ingenious and persistent manner in which they have been advertised, the good will acquired in this way takes on still another aspect and is entitled to protection. L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273; Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962.

Even though a trade name has not been registered or is incapable of being a valid trade-mark, under the Federal Trade-Mark Act, 15 U.S.C.A. § 81 et seq., it may, nevertheless, be given protection against infringement as a result of unfair competition where it has become recognized by the general public as identifying the product of a certain manufacturer or business place or places of a certain firm. Safeway Stores, Inc. v. Sklar, supra.

The word "trade-mark" is applicable to the vendable commodity to which it is affixed, while "trade name" applies to a business and its good will.

The defendant asserts the right to use his own name in doing business. It is generally true that a surname cannot be appropriated for exclusive use as a trade name, Borden Ice Cream Co. v. Borden's Condensed Milk Co., 7 Cir., 201 F. 510; Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247; Emerson Electric Mfg. Co. v. Emerson Radio etc., D.C., 24 F.Supp. 481, affirmed, 2 Cir., 1939, 105 F.2d 908; Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 8 Cir., 211 F. 271, yet, its use by a newcomer to a field of trade may be restrained where it is calculated to deceive, Champion Spark Plug Co. v. Champion, D.C., 23 F.Supp. 638; L. E. Waterman Co. v. Modern Pen Co., supra; Rochester Savings Bank v. Rochester Savings & Loan Ass'n, 170 Misc.

983, 11 N.Y.S.2d 130, or where its natural tendency will be to mislead the public, Rosenberg Bros. & Co. v. Elliott, supra; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., supra; Thaddeus Davids Co. v. Davids Mfg. Co., supra, or where the way is opened for dealers to create confusion in the mind of the public. John H. Woodbury, Inc. v. William A. Woodbury Corp., D.C. 23 F.Supp. 162; John B. Stetson Co. v. Stephen L. Stetson Co., supra; Chesebrough Mfg. Co. v. Old Gold Chemical Co., 6 Cir., 70 F.2d 383.

Even if similar registrations and uses had been made of the name "Gamlen," and no evidence to this effect has been presented in this case to show the wide spread use of the name on products of many descriptions, such use would not avail the defendant where it is possible that the plaintiff will be wronged by said use. Bond Stores, Inc., v. Bond Stores, Inc., 3 Cir., 104 F.2d 124; Rochester Savings Bank v. Rochester Savings & Loan Ass'n, supra.

Unfair competition in the instant case relates to whether the use of the trade-mark or trade name "Gamlen" by the defendant in the conducting of his business and upon his labels is likely, under ordinary circumstances, to deceive purchasers that defendant's product is that of the plaintiff. Sales of the products of the respective party litigants are based on personal contact. Considerable chemical research and engineering had been conducted by the plaintiff over a period of years, and advertising made of the plaintiff's products. Due to the similarity of the defendant's products, could purchasers be deceived as to whose product they were purchasing? The Court must weigh all these matters and consider them under the test ordinarily applied to the testimony of witnesses. However, the evaluation of the weight of this testimony is largely dependent upon the application of the court's reasoning based upon its own examination of the exhibits. In determining this question, decisions of the court are seldom helpful for comparison. J. Greenebaum Tanning Co. v. Respro, Inc., 94 F.2d 818, 25 C.C.P.A., Patents, 899.

It is not often that a precedent is found. Affiliated Products Co. v. Crazy Water

Co., 104 F.2d 366, 26 C.C.P.A., Patents, 1331.

[26] The exhibits are to be considered as a whole in connection with the products involved.—Younghusband v. Kurlash, Co., Inc., 94 F.2d 230, 24 C.C.P.A., Patents, 886.

The test of identity is whether an ordinarily prudent purchaser would be liable to purchase the goods of the defendant believing them to have been made by the plaintiff. McDonald & Morrison Mfg. Co. v. Mueller Mfg. Co., 8 Cir., 183 F. 972; Skram Co. v. Bayer, Inc., 82 F.2d 615, 23 C.C.P.A., Patents, 1049. It is confusion of origin, not confusion of goods, which controls. Vick Chemical Co. v. Vick Medicine Co., D.C., 8 F.2d 49, 52.

Among the reasons for my belief that confusion will result from the use of the word "Gamlen" in the conducting of the defendant's business on his labels and in his advertising, as to unfair competition, are these:

The products in question comprise similar chemical constituents and are comparable in the results obtained. They are ordinarily sold by communication being had directly with the purchasing agents of the company or individuals who have occasion to use said products. The surname "Gamlen" is printed conspicuously on labels used by both the plaintiff and defendant. It is so outstandingly conspicuous on the defendant's label that unless close observation is given the word "C" on the defendant's label, it could very easily be mistaken for the word "G". Further the defendant does business as "C. Gamlen Company" and the word "C" very easily could be taken for the word "G". There also appears to be marked similarity in the colors used in the labels, that is, the colors used catch the eye, and the distinguishing characteristics of the two companies cannot be observed unless an individual would have some particular reason to endeavor to determine the exact differences which exist. It is obvious and apparent to me that among the consumers of the plaintiff's products the name "Gamlen" has become identified with the plaintiff in the public mind. It is my impression, from observation of the label, that the use of the word "Gamlen" in the size, place and manner by the defendant would likely deceive a person who was not concerned in knowing that the products were those of the defendant or the plaintiff.

Prior to the time that defendant commenced business, he was unknown in the business world. I realize that he was known as an officer and owner of the Gamlen Chemical Company but if the defendant desired to be fair in the furtherance of his business venture, without any consideration being given to the close relationship between the majority owners of the plaintiff company and the defendant, he should not have used the name "Gamlen" in the manner that he has.

It is not necessary for the plaintiff to show that there was intentional deception on the part of the defendant. Notaseme Hosiery Co. v. Straus, 2 Cir., 201 F. 99; Yale & Towne Mfg. Co. v. Worchester Mfg. Co., D.C., 205 F. 952. This might well be found upon the emphasis given in print to the word "Gamlen." Testimony has been introduced as to the defendant's representations that his products are bonded by considerable research and engineering relating to their effectiveness. It is an admitted fact that the defendant has made no chemical engineering or research relating to his products, and that the plaintiff over a period of years has given considerable attention to the engineering and chemical research of the products manufactured and produced by the plaintiff.

Actual market competition is not an essential element in determining whether unfair competition exists where there was probable tendency that defendant's use of trade name "C. Gamlen Company", as an individual trade name under Pennsylvania Fictitious Name Act, would deceive the public, and it was probable that defendant's goods would be considered as those of plaintiff operating under trade name "Gamlen Chemical Company, a corporation." Defendant's use of such name constituted unfair competition entitling plaintiff to injunctive relief. Acme Chemical Co. v. Dobkin, D.C., 68 F.Supp. 601.

■ At this time the plaintiff has actually lost no business as result of the defendant's venture. However, assuming that the defendant is not diverting the customers of the plaintiff or that the plaintiff has no customers to divert, where a goodwill is established under the owner of a name, he may protect it not only against the competition of those who invade his market, but also against those who use the name to sell goods or products near enough alike to confuse the customers who buy it. S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 116 F.2d 427; Emerson Electric Mfg. Co. v. Emerson Radio etc., supra; Charles E. Hires Co. v. George A. Hires et al., 182 Pa. 346, 37 A. 1117.

■ It is, therefore, necessary for the Court, although no sales up to this time have been lost by the plaintiff, to protect the plaintiff's reputation with his customers. Nobody willingly allows another to masquerade as himself; it is always troublesome, and generally impossible, to follow the business practices of a competitor closely enough to be sure that they are not damaging, and the harm is frequently done before it can be prevented. I must not go astray in any phase of the whole subject, and lose sight of the underlying principle that the wrong involved is diverting trade from the first user by misleading customers who mean to deal with him. It falls, therefore, that the newcomer, or the defendant in this action, is subject to stricter limitations upon the use of his name since he is competing in the first user's own market. S. C. Johnson & Son v. Johnson, Inc., supra.

The defendant should not be permitted to be in a position where he can ride upon the coattails of his father's business in an inevitable effort to obtain the stature or success now maintained by the plaintiff corporation. One cannot be permitted to grow through the use of another's congenial symbol. LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir. 157 F.2d 115.

■ The defendant having been an officer of the plaintiff company should not be permitted to have access to the list of the plaintiff's former customers or to make use of any formulae, processes, and technique developed while he was connected with the plaintiff company. John T. Lloyd Laboratories, Inc., et al. v. Lloyd Brothers Pharmacists, Inc., et al., 6 Cir., 131 F.2d 703.

■ Any products which are produced by the plaintiff, which fall within the category of trade secrets, are entitled to protection. Any person who acquires knowledge thereof in a confidential capacity is under the obligation not to disclose the secret or use it for his own advantage even if no expressed contract to that effect exists. Belmont Laboratories, Inc., Appellant, v. Heist et al., 300 Pa. 542, 151 A. 15.

■ In equity an injury is irreparable if the wrongs are of a repeated and continued character, or occasions damages which are estimable only by conjecture and not by an accurate standard. There can be no balancing of the injuries which may arise from granting or refusing an injunction where such balancing involves the preservation of or injury to an established right. Stuart, Appellant, v. Gimbel Bros., Inc., et al., 285 Pa. 102, 131 A. 728.

■ A person in the employment of another individual cannot withdraw from said employment and proceed to sell the same product, using his own surname which is similar to that of his former employer, and simulating the former employer's labels, advertisements and trade circulars where the intent to deceive the public exists. Where such circumstances exist, regardless of fraudulent intent, the former employee cannot use his own name. Van Stan's Stratena Company, Ltd., Appellant. v. Van Stan, 209 Pa. 564, 58 A. 1064, 103 Am.St.Rep. 1018.

■ Any conduct, the natural and probable effect of which is to deceive the public, so as to pass off the goods of one person as and for that of another, constitutes unfair competition. If the effect be to injure the person formerly in business, the fact that the defendant has no fraudulent intent is no defense. Irrespective of the question of trade-mark, a

person coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of the rival. Pennsylvania Central Brewing Company v. Anthracite Beer Company, Appellant, 258 Pa. 45, 101 A. 925.

A defendant's good faith in believing that he has so marked his goods as to distinguish them from the plaintiff's will not protect him from a charge of unfair competition if the court finds that confusion has resulted or is likely to result. No person can adopt a trade-mark so resembling that of another trade-mark that ordinary purchasers buying with ordinary caution are likely to be misled. Best & Co., Inc., v. Miller, 2 Cir., 167 F.2d 374.

The defendant has gone far afield in his business activities by the use of literature, pamphlets, photographs, drawings and written contexts therein and thereon similar to the plaintiff together with the representations made in connection with chemical and engineering research. It would be very easy for an individual, who was not informed as to the separate identity of the plaintiff company and the defendant, to believe that the product being purchased was that of the plaintiff rather than the defendant. It must be realized that although the defendant might not engage in any personal representation, his employees might be tempted, due to the wide competitive field which exists, to make representations in such a manner that although the products would be purchased from the defendant's representatives, the purchaser might be led to believe the same were placed on the market by the plaintiff.

I believe the word "Gamlen" is being used by the defendant on pamphlets and advertising matters unfairly, and the conduct of his business could very easily create confusion and deception in the minds of persons who were not fully informed and advised as to the respective interests and businesses of the plaintiff and defendant. I do not believe the defendant should be permitted to use the name "Gamlen" in the manner which he has done since it is extremely possible in so doing to infringe on the good will of the plaintiff and commit a fraud and trespass upon its property rights. No person should have the right to use even his own name where the public might be deceived or led to the belief that the goods being sold by the defendant are the goods of the plaintiff.

The defendant, in my judgment, has the right to engage in the business in which he is now concerned but his actions calculate to mislead the public as to the identity of his business and products sold, and the injury to the plaintiff is not confined to the inconvenience or loss which might arise as result of the similarity of the names.

I believe the defendant, through the ingenuity and skill which he apparently has, can under the circumstances suggest a worthy substitute by way of name in which to engage and further his business venture.

This lawsuit is causing considerable ill-feeling and deep seated wounds between the son and his father, and the other members of this once happy family. It should be remembered there is more in life than material things or financial gain. If the defendant would keep this predominant in his mind, he would be able to contribute materially in many ways to the happiness, well-being and welfare of his father during the remaining years of his life.

I, therefore, believe that the defendant should be preliminarily restrained from using the sole surname of "Gamlen" in connection with continuing his business and upon his labels, or any other advertising matter used in the furtherance thereof.

### Findings of Fact.

1. The plaintiff, Gamlen Chemical Company, is a California corporation and has its principal place of business in San Francisco, California. It is registered to do business in Pennsylvania and for some time past has had offices, a warehouse, and manufacturing plant in Pittsburgh, Pennsylvania.

2. The defendant, Harry Cuthbert Gamlen, is a citizen of Pennsylvania, and a resident of Whitehall Borough, Allegheny County, Pennsylvania.

3. The complaint herein charges the defendant with (a) violation of fiduciary relationship to the plaintiff and unfair competition, (b) trade-mark infringement, and (c) copyright infringement. There is a diverstiy of citizenship between the parties. The value of the plaintiff's business and good will is materially in excess of Three Thousand ($3,000.00) Dollars.

4. The President of the plaintiff corporation is Harry Gamlen; the defendant is a son of Harry Gamlen. The defendant is a stockholder in the plaintiff corporation and, until April 15, 1948, was actively a director of and held the offices of and discharged the responsibilities of Vice President, Secretary and Treasurer of the plaintiff corporation. On or about May 22, 1948, the defendant executed a complaint against the plaintiff (which complaint was filed in the California Court subsequent to the filing of the complaint herein) wherein he asserted rights as a director of the plaintiff corporation.

5. From the initiation of the plaintiff company and up until he left it on April 15, 1948, defendant was Vice President, Secretary and Treasurer of such company, which he resigned, but he still remains a director of said company.

6. In or about 1932, in San Francisco, California, Harry Gamlen, in association with his brother, entered upon the business of manufacturing a chemical compound for use in steam boilers to eliminate combustion deposits and slag on tube surfaces and refractories. Harry Gamlen subsequently became the sole proprietor of the business and operated it under the name and style of "Gamlen Chemical Company." In or about the year 1935, Harry Gamlen invited the defendant into partnership and gave him a one-third interest in business. At that time the defendant was a minor and had no knowledge of or training in the chemical business. Subsequently, James E. Gamlen, a younger brother of the defendant, came into the partnership but the defendant's one-third interest therein was never reduced. The business was carried on without interruption by the successive family partnerships until on or about January 1, 1946, when the plaintiff corpo-

ration succeeded to the business, good will, trade-marks and other assets of the partnership. The plaintiff corporation has continued the business since that time.

7. Eighteen hundred shares of capital stock in the plaintiff corporation were issued, of which six hundred were issued to the defendant, corresponding to his one-third interest in the partnership, the other shares being held by Harry Gamlen and James E. Gamlen. In addition to his stock interest in the plaintiff corporations, the defendant received an agreed salary of approximately $1,000.00 a month from them for his services as an officer and director.

8. The product referred to in Finding 6 above was called "Gamlenite." As time went on the partnership marketed other chemical products, particularly useful in the industrial and maritime fields, including cleaning compounds, solvents, protective coatings and detergents. The compositions were sold as proprietary compounds instead of by their chemical names. The compositions were regarded as trade secrets and were recorded in formula books which were themselves kept confidential and in which, as a further precaution, the various ingredients were specified by code numbers instead of by their scientific or chemical names, and the codes were separately kept and individually retained by the partners, including the defendant. The defendant had and has complete knowledge of the plaintiff's formulas.

9. It was the policy of the partnership, and subsequently of the plaintiff corporation, to bind employees by secrecy agreements not to divulge any information or knowledge of a secret or confidential nature relative to the business of the employer nd obtained or acquired by the employee by reason of his employment. Defendant had knowledge of these agreements and caused some of them to be executed by employees.

10. The plaintiff's business is nationwide. It maintains sales offices or sales representatives in many cities of the United States, particularly in the industrial cities and on the Atlantic and Pacific seaboards, in order to obtain maximum distri

638

bution for its products in the industrial and maritime fields.

11. In or about 1936 the partnership opened offices in Pittsburgh and made them the headquarters of its Eastern Division, which has jurisdiction over all the business east of the Rocky Mountains. In 1939 the defendant took charge of the Eastern Division and as such had active charge of the manufacturing and selling operations in Pittsburgh and general jurisdiction over sales in the Eastern Division. When the plaintiff corporation succeeded to the business of the partnership, the defendant had the same authority and responsibilities with it. The defendant had and has complete knowledge of and direct contact with all the plaintiff's representatives and salesmen in its Eastern Division and complete knowledge of the names of the plaintiff's customers in its Eastern Division.

12. Sometime during April or early in May, 1948, the defendant commenced to do business at Pittsburgh and elsewhere over substantial portions of the plaintiff's Eastern Division under the fictitious name and style of "C. Gamlen Company" in the manufacture and sale of cleaning compounds, solvents, rust preventatives, protective coatings, detergents, paints and kindred items. The defendant has competed and continues to compete with the plaintiff.

13. With one exception, all of the defendant's products are counterparts of the plaintiff's products. The products of both the plaintiff and the defendant are sold as proprietary compounds rather than under their chemical names.

14. The defendant represents to the trade that his products "have been developed over a period of many years by chemical engineers, experts in the highly specialized problems of marine and industrial maintenance jobs." He further represents to the trade: "Our staff of field and service engineers are thoroughly trained in the proper selection and application of these products. This invaluable collective experience is at the service of every user of C. Gamlen chemical products."

15. The defendant does not himself manufacture or compound his products but has them compounded for him by another concern. His activities are primarily in selling. With but one exception, all of his sales representatives were formerly sales representatives of the plaintiff. The plaintiff's Eastern Division is divided into four "territories" each of which is headed by a supervisor. Of the four supervisors in charge of the plaintiff's sales (under the defendant) in these territories on April 15, 1948 the defendant entered into arrangements with three of them (Thomas Faver, Russel Jeffries, and R. Regensburg) whereunder they represent him in territory the same as or including the territory in which they formerly represented the plaintiff. He attempted to procure the services of the fourth supervisor (George Dadd), but without success. The defendant also procured the services of I. R. Whiteman, a salesman of the plaintiff in its Eastern Marine territory and attempted to procure the services of other of plaintiff's sales representatives.

16. Defendant has two office employees (Anna Gramentine and Irene Thompson) both of whom were formerly employed by the plaintiff. On January 7, 1948 Anna Gramentine and Irene Thompson, at the request of the defendant, agreed with the plaintiff corporation that they would not disclose any information or knowledge of a secret or confidential nature relative to the business of Gamlen Chemical Company which might be obtained by or acquired by them by reason of their business connection and that for a period of two years following severance of their business connection with Gamlen Chemical Company they would not compete directly or indirectly with the plaintiff by engaging in the same or any similar line of business or by entering the employment of any one else so engaged, in the states of New York, Pennsylvania and New Jersey. Irene Thompson is employed by the defendant in his Pittsburgh Office and Anna Gramentine in his New York Office. Russel Jeffries entered into a like agreement with the partnership on November 17, 1945 and on January 30, 1948 extended its terms to the plaintiff corporation. R. G. Regensburg entered into a secrecy agreement with the Gamlen partnership on September 13, 1945.

17. The Gamlen partnership and subsequently the plaintiff corporation have made substantial expenditures in time and money in acquainting the trade with the origin and excellence of their products sold under the name Gamlen and "Gamlen" has become distinctive of their goods in commerce.

18. Except for the acts of the defendant since April 15, 1948, the plaintiff and its predecessors have enjoyed exclusive use of the name "Gamlen" in the chemical business. The plaintiff (and its predecessors) used the name "Gamlen" on labels to indicate to the public that the products to which the labels are attached are products of the plaintiff corporation (or its predecessors).

19. The defendant uses labels generally similar in arrangement to the plaintiff's labels. In each case the name "Gamlen" appears prominently at the top of the label on a colored background. In each case there is a white space below the name "Gamlen" with a black border, wherein the product is designated by name or otherwise. In the plaintiff's label, the name "Gamlen Chemical Company" appears in block type below the space for the product designation. In the defendant's label the words "Gamlen Company" appear in block type below the space for the product designation; a script "C" appears adjacent to the initial letter "G" in the name "Gamlen." At the top of the defendant's label there is a white script "C" over which the name Gamlen is printed in black. In the plaintiff's label, below "Gamlen Chemical Company" there is printed in italic type "Representatives in all Principal Cities and Ports". In the defendant's label, in a corresponding location, there appears the legend in italic script "Representatives in all Principal Cities and Ports". Some but not all of the defendant's labels approximate the plaintiff's labels in background color.

20. Plaintiff has learned by means of chemical analysis the make-up of competitive products in order to find out how close they come to plaintiff's products.

21. Plaintiff's president has himself analyzed some competitive products "to see how close competitive products are to plaintiff products."

22. Plaintiff has had some of its own products analyzed by commercial chemists.

23. Gamlenite is one of plaintiff's products that was analyzed by a commercial chemist.

24. For every one of plaintiff's products there is a corresponding competitive product sold by some competitor.

25. More than six competitors of plaintiff are currently selling products for eliminating by chemical means combustion deposit and slag on tube surfaces and refractories of steam boilers.

26. Gamlenite eliminates by chemical means combustion deposit and slag on tube surfaces and refractories. It also has a metal replacement characteristic.

27. Plaintiff's Gamlenite differs from similar-purpose competitive products in that Gamlenite has a metal replacement characteristic, whereas similar-purpose, competitive products do not.

28. No evidence was offered to show the defendant was employing any of plaintiff's formulations in the production of his products, but the defendant has in his possession the formula book and code reference relating thereto, to which he has no individual claim, title or right.

29. Defendant's products serve the same practical purpose as plaintiff's products.

30. Harry Gamlen and his brother, Eli Gamlen, purchased the going business of one Tom Forrester who was producing a soot removing product, Eli Gamlen advancing the amount of $150.00.

31. Harry Gamlen and Eli Gamlen started in business by selling the soot removing product previously produced by Tom Forrester.

32. The Gamlen Products Company prospered but Harry Gamlen and Eli Gamlen had differences arise over who should have the controlling interest in the partnership.

33. No adjustment was made, and subsequent thereto Harry Gamlen conducted the business as the individual owner under the name of Gamlen Chemical Company.

34. There is no indication of any difficulty between the defendant and his father, Harry Gamlen, until within the last few months, at which time Harry Gamlen questioned and made inquiry of the defendant,

and I believe properly so, relating to the status, supervision, earnings, records and management of the Gamlen Chemical Company of Canada.

35. On March 29, 1948, Harry Gamlen sent out a call for a special meeting of the Directors of the plaintiff company, the meeting to be held April 8, 1948 in Pittsburgh. One of the purposes of the meeting was to divest defendant of the offices of Secretary and Treasurer of the plaintiff company and to elect James E. Gamlen Treasurer, and a Walter Fuchs Secretary. The meeting, however, did not proceed to that point.

36. Defendant sent letters of resignation to Harry Gamlen on April 7, 1948 by registered mail, but Harry Gamlen returned the letters to defendant unopened.

37. Copies of letters of resignation were sent on April 7, 1948 to James E. Gamlen, and also to the San Francisco office of the plaintiff company.

38. Defendant wrote his father, Harry Gamlen, on April 15, 1948 in which he stated "I will be leaving the company as of the close of business on April 15, 1948."

39. Defendant attended a function in New York with plaintiff's New York representative, Val Savage, on the night of April 15, 1948.

40. At the request of plaintiff's New York representative, Val Savage, defendant conferred with his father, Harry Gamlen, his brother, James E. Gamlen, Val Savage and a Mr. Roden throughout the week of April 18, 1948 in an effort to settle the difficulties which had led to defendant's resignation. The conference lasted from Monday through Friday.

41. The conference during the week of April 18, 1948 did not effect a settlement of the difficulties which had led to defendant's resignation as an officer of the plaintiff company.

42. Sales made by the plaintiff company are in effect personal sales wherein the salesman or representative of plaintiff contacts the prospective purchaser or a representative of the prospective purchaser.

43. Generally, sales by both the defendant and the plaintiff company are made by personal contact between representatives of vendor and vendee. The goods involved are delivered after the sale is consummated. However, in some cases customers have called or written the plaintiff company for their products.

44. Neither defendant's products nor plaintiff's products are "over the counter" goods.

45. The labels, trade-marks and names are similar in most respects and may readily cause confusion in the mind of some purchaser or prospective purchaser.

46. The word "Gamlen" has not been registered as a trade-mark by the plaintiff.

47. The word "Gamlen" has not been used by the plaintiff except in association with some other word, letter, number or symbol.

48. Gamlenite was registered as a trade-mark by one of the partnerships preceding the plaintiff company.

### Conclusions of Law

1. The Court has jurisdiction in the premises.

2. The defendant's method of doing business is calculated to impair the good will of the plaintiff.

3. The word "Gamlen" is a valid and subsisting trade-mark of the plaintiff.

4. The defendant has used and is using the plaintiff's trade-mark "Gamlen" and is employing labels which are deceptively similar to the plaintiff's.

5. The defendant has competed and is competing unfairly with the plaintiff in that (a) he has traded upon knowledge of the plaintiff's customers and customer relationships acquired by him and his representatives when he and they were associated with the plaintiff; (b) he has caused employees and employees of the plaintiff to violate agreements with the plaintiff, which agreements the defendant knew about and was instrumental in having the employees execute; (c) he has used the name "Gamlen" in a manner calculated to cause confusion in the trade; (d) he has infringed the plaintiff's trade-mark "Gamlen" and has simulated the plaintiff's labels.

6. The plaintiff is entitled to a preliminary injunction.

A preliminary injunction is hereby entered in the following particulars:

The defendant, Harry Cuthbert Gamlen, sometimes called "Curt Gamlen" and doing business under the name and style "C. Gamlen Company," his agents, servants, employees and attorneys, is preliminarily restrained and enjoined—

(a) from authorizing, either actually or impliedly, any agents, demonstrators, salesmen or dealers, from representing to any buyer, retailer or consumer that the goods manufactured, sold or advertised by the said defendant emanate from or are in any way connected with plaintiff, and from causing others in any way to make such oral or written representations;

(b) from using the name C. Gamlen Company, or any other name or style confusingly similar to plaintiff's corporate name, in connection with the manufacture and sale of cleaning compounds, solvents, rust preventatives, protective coatings and detergents, or any of them;

(c) from selling or in any way disposing of and from advertising or offering for sale cleaning compounds, solvents, rust preventatives, protective coatings or detergents, or any of them, labeled or having printed thereon or connected therewith the word "Gamlen," either alone or in combination with other words or characters;

(d) from using in any manner any of the secret code books or formula books of the plaintiff, or any copies thereof, or any of the subject matter contained therein;

(e) from using in any way any of the books and records of the plaintiff or any other data of the plaintiff pertaining to sales, salesmen, distribution, prices, discounts and manufacturing or other information pertinent to the products of the plaintiff or its operations that were taken from the plaintiff, or any copies thereof, or any of the subject matter contained therein;

(f) from in any manner whatsoever representing himself or the business he is conducting as being associated or connected with the plaintiff, or deriving from it, or situated to serve the public by reason of the defendant's knowledge of or former connection with the plaintiff; and

(g) from enticing away the plaintiff's employees, agents, representatives or customers or any of them.

In accordance with Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the preliminary injunction herein entered is to become effective at such time as the plaintiff files in the office of the Clerk of the United States District Court for the Western District of Pennsylvania security or bond in the amount of Ten Thousand Dollars ($10,000.-00) to be approved by the Court for the payment of such costs and damages as may be incurred or suffered by the defendant in the event that it is subsequently determined that the defendant has been wrongfully enjoined.