**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 30, 2001**

MGM GRAND DETROIT, LLC,

    Plaintiff-Appellee,

v

COMMUNITY COALITION FOR EMPOWERMENT
INC., and ERNEST JOHNSON,

    Defendants-Appellants,

v

JACKIE L. CURRIE, in her capacity as
CITY CLERK FOR THE CITY OF DETROIT and
DETROIT CITY COUNCIL,

    Third-Party Defendants-Appellees.

No. 119309

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

The issue is whether Detroit Ordinance 35-98 is exempt
from the power of referendum found in the Detroit Charter.
On its own motion, this Court voted to grant leave to appeal[1]
before a decision by the Court of Appeals. Having heard oral
argument, we now find as follows:

(1) The power of referendum in the Detroit Charter does
"not extend to the budget or any ordinance for the

_____

[1] 464 Mich 855 (2001).

appropriation of money . . . ." Detroit Charter § 12-101.

(2) Detroit Ordinance 35-98 provides in pertinent part:

The Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 34/100 Dollars ($333,333.34) early advance heretofore paid by the developer to the City pursuant to the development agreement is hereby appropriated to the temporary casino site support and infrastructure improvement . . . .

(3) An appropriation of $333,333.34 is an "appropriation of money" and Ordinance 35-98 is "any ordinance."

(4) Therefore, the power of referendum in the Detroit Charter does not extend to ordinance 35-98.

Accordingly, consistent with *MUCC v Secretary of State*, 464 Mich 359; ___ NW2d ___ (2001), the circuit court's judgment granting MGM's motion for summary disposition is affirmed. The case is remanded to the Court of Appeals for resolution of the remaining issues.

Response to Justice Weaver's dissent

Justice Weaver dissents, asserting that we improvidently granted leave in the case at bar to be heard with the *MUCC* case because it has now become apparent the cases are too dissimilar to be considered together. She further asserts that the cases are no longer being considered together, in that the *MUCC* decision was issued just over three weeks ago. We cannot agree. The fact that the *MUCC* opinion was issued less than a month ago does not mean the case at bar and the *MUCC* case were not considered together. The *MUCC* decision was issued on an expedited basis in order to meet a statutory deadline. No such deadline exists in this case. Hence the Court has taken the prudent course of allowing additional time

before issuing its decision in this case before the end of our term on July 31, 2001. Further, the *MUCC* case and the case at bar are similar.[2] While the language in the Michigan Constitution and the Detroit Charter are not identical, they are closely related and warrant application of the same analysis.[3] That is why we are affirming on the basis of our holding in the *MUCC* case.

### Response to Justice Cavanagh's dissent

Justice Cavanagh dissents, asserting this appeal should be dismissed on the basis of mootness. He contends the case is moot because MGM renovated the building and that such renovation precludes the Court from being able to grant defendants the relief they request. Justice Cavanagh also posits that MGM would have a legal right to stay in the casino even if the ordinance went to a referendum and lost because the renovated casino would constitute a prior nonconforming use that could remain despite any zoning change.

The claim of mootness does not withstand serious

---

[2]In the *MUCC* case the issue was whether a statute that included a million dollar appropriation was exempt from a referendum because it was an "act[] making [an] appropriation[] for [a] state institution[]," whereas the issue in the case at bar is whether an ordinance that included a one-third of a million dollar appropriation is exempt from a referendum because it constitutes "any ordinance for the appropriation of money."

[3]Although the issues in each case warrant application of the same analysis, when we granted leave we were faced with a split of authority between the Court of Appeals decision in *MUCC, supra* (which applied the amorphous "core function" test) and Judge Sapala's decision in this case (which relied on the plain and unambiguous language of the Detroit City Charter). By considering this case along with the *MUCC* case we have provided an efficient resolution to a single problem.

3

scrutiny. Preliminarily, we note that the burden of demonstrating mootness is a "heavy one." *Los Angeles v Davis*, 440 US 625, 631; 99 S Ct 1379; 59 L Ed 2d 642 (1979). This means to get an appeal dismissed as moot, thus depriving a party seeking redress of a day in court, the party urging mootness on the court must make a very convincing showing that the opportunity for an appellate court to review the matter should be denied. Not surprisingly, it is rare for a court to grant such a motion. Furthermore, neither MGM nor the city filed a motion to dismiss the appeal on the basis of mootness. Indeed, the mootness argument is only presented in a manner that conveys its infirmity.[4]

While it is true that defendants did not seek a stay after the trial court ruled against them (nor did they have to), they did file a timely appeal in the Court of Appeals. They also sought, albeit unsuccessfully, an expedited hearing from the Court of Appeals. It is also the case that the city and MGM were on notice that they proceeded at their peril if they built before the appeal was resolved because defendants sent a letter to the city council and MGM advising them exactly of that. Under such circumstances, one cannot reasonably conclude that defendants' claim is moot. In fact, the obviousness of this is probably why the city and MGM did not bring such a motion.

It not only is common sense, but also a well-established

---

[4]The supplemental brief filed on behalf of the city clerk and the city council merely mentions mootness in a footnote found on page 19 of its twenty-page brief.

legal principle, that a party can not obliterate an opponent's appeal, on the basis of mootness, by so changing the status quo during the appeal (remarkably enough in this case by building the very casino that was at issue in the appeal while the appeal was pending) that they can then argue it is impossible to return to the situation that existed when the appeal was filed. The United States Supreme Court, no less, has said as much. In *Jones v Securities and Exchange Comm*, 298 US 1, 15-18; 56 S Ct 654; 80 L Ed 1015 (1936), our nation's highest Court said:

> The rule is well settled, both by the courts of England and of this country, that where a suit is brought to enjoin certain acts or activities, for example, the erection of a building or other structure, of which suit defendant has notice, the hands of the defendant are effectively tied pending a hearing and determination, even though no restraining order or preliminary injunction be issued.

> * * *

> The conclusion to be drawn from all the cases is that after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, *he acts at his peril* and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided.

We concur with the United States Supreme Court, reinforced in this conclusion by the fact that there is no contrary authority in our jurisprudence.[5]

---

[5]Also instructive is *West v Secretary of the Dep't of Transportation*, 206 F3d 920 (CA 9, 2000). In this case, there was a dispute regarding the building of a highway. A builder argued the case was moot because the construction for stage 1 of the highway was already complete. The Court rejected this argument, noting that if completion of construction was the

(continued...)

5

We also note that it is premature for Justice Cavanagh to conclude on the basis of *Heath Twp v Sall,* 442 Mich 434; 502 NW2d 627 (1993), that MGM would have a legal right to stay in the building if the ordinance went to a referendum and lost. If this were to occur, MGM could then make whatever arguments it had at that time.

Justice Cavanagh asserts that leave was granted in this case by the Court in order to "demonstrate that the Court would apply the same logic" to this case as we did in the *MUCC* case.

To the charge that the majority attempts to apply the same logic to all cases coming before it, we plead guilty. Justice Cavanagh's discontent with our approach merely reflects our differing views on the proper role of the judiciary in our representative democracy.

We, the majority, apply the text of the constitution, a statute, or an ordinance according to its ordinary meaning. We are prepared to live with the result of the plain application of such texts, regardless of whether we personally agree or disagree with the outcome. We subscribe to the notion that judges are not the lawgivers in our society;

---

[5](...continued)
test, parties could merely ignore the requirements of the law, build its structures before a case gets to court, and then hide behind the mootness doctrine. The Court concluded that "[s]uch a result is not acceptable." See also *Gamlen Chemical v Gamlen*, 79 F Supp 622 (WD Pa, 1948):

> Equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status though he succeeded in making the change before the chancellor's hand actually reached him.

rather, they are the interpreters of the law.

Justice Cavanagh's judicial philosophy is perhaps more "complex" than ours insofar as he is willing to depart from giving texts a plain reading for a more "complicated" construction, one less respectful of the words themselves used by the lawgiver, in this case the people of the city of Detroit in enacting their charter. See, for example, his *MUCC* dissent, where he introduces a "core function" test as a means of avoiding the conclusion that a one million dollar appropriation is, in fact, an appropriation under art 2, § 9. We decline to read in such complexities where none are apparent in the language of the law.

CORRIGAN, C.J., and YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

# STATE OF MICHIGAN

## SUPREME COURT

MGM GRAND DETROIT, L.L.C.,

    Plaintiff-Appellee,

v                                      No. 119309

COMMUNITY COALITION FOR EMPOWERMENT,
INC., and ERNEST JOHNSON,

    Defendants-Appellants,

v

JACKIE L. CURRIE, in her capacity as
CITY CLERK FOR THE CITY OF DETROIT and
DETROIT CITY COUNTIL,

    Third-Party Defendants-Appellees.

_____

CAVANAGH, J. (*dissenting*).

This case arrived here at this Court's request. Another vehicle was desired, along with *Michigan United Conservation Clubs v Secretary of State*, 464 Mich 359; ___ NW2d ____ (2001), to demonstrate that the Court would apply the same logic to deny residents of the city of Detroit the right to a referendum vote on a rezoning ordinance for casino gambling that was applied in *MUCC* to deny this state's residents the right to a referendum on new gun legislation.  The majority, having decided in *MUCC* that the insertion of a dollar amount, however ill-intended, renders a new law referendum-proof, now

is determined to opine on the merits of this issue again rather than following the normal course, or option, of remanding this case to the Court of Appeals for consideration in light of this Court's decision in *MUCC*. For the reasons that follow, I would do neither.

Rather than affirm the trial court's decision in this case, I would dismiss because this case has become moot. When intervening changes in a case's factual circumstances make it impossible for a court to fashion a remedy, the case has become moot and should be dismissed. See *UAW v Governor,* 388 Mich 578, 582; 202 NW2d 290 (1972); see also *Crawford Co v Secretary of State,* 160 Mich App 88, 93; 408 NW2d 112 (1987). The changes in the factual circumstances of this case prevent this Court from being able to grant defendants Community Coalition for Empowerment and Ernest Johnson the relief they seek, so this case should be dismissed. Therefore, I respectfully dissent from the majority's decision to affirm the trial court.

I

This case arises from the implementation of casino gambling in the city of Detroit. A detailed understanding of the facts illustrates that this case has become moot.

By adopting Proposal E in 1996, voters decided to allow licensed casino gambling in Detroit. Plaintiff MGM Grand was subsequently chosen as one of the developers to conduct casino gambling, and plaintiff then selected a site in an existing building to establish a temporary casino facility. Next, the Detroit City Council adopted ordinance 24-98, which changed

2

the zoning at the site from commercial to planned development, which would allow plaintiff to use the site for its temporary casino.

Defendants sought to refer ordinance 24-98. In accord with the referendum power reserved in the Detroit City Charter, art 12, § 101, defendants conducted a petition drive and submitted a sufficient number of valid signatures to the third-party defendant Detroit City Clerk, who certified the referendum petition in September 1998. Instead of subjecting ordinance 24-98 to popular adoption or rejection through a referendum election, however, the Detroit City Council repealed the ordinance, a power provided to the council by Detroit City Charter, art 12, § 107.

At the same session when the Council repealed ordinance 24-98, it adopted ordinance 35-98. Like ordinance 24-98, the new ordinance rezoned plaintiff's site to allow plaintiff to use the site for a temporary casino, but the new ordinance additionally "appropriated [$333,333.34] to the temporary casino site support and infrastructure improvement appropriation . . . ."

Defendants conducted another petition drive, seeking to refer ordinance 35-98. They again submitted a sufficient number of valid signatures to the Detroit City Clerk, but she informed them that the petition did not meet the legal requirements for certification because ordinance 35-98 was an appropriations measure, exempt from referendum. The city

3

clerk, therefore, did not certify the referendum petition.[1]

On the same day that the city clerk denied certification, this litigation began. Plaintiff MGM Grand filed a complaint seeking a declaration that defendants' petition was without legal effect. Several days later, defendants filed a third-party complaint against the Detroit City Clerk and the Detroit City Council, as well as a counterclaim against plaintiff. The counterclaim sought a temporary injunction against plaintiff,[2] and the third-party complaint sought declaratory relief and mandamus ordering the city clerk to certify the petition. After briefing and argument on cross-motions for summary disposition, the trial court issued a written opinion in January 1999, "finding that ordinance 35-98 is not subject to referendum under the City Charter of Detroit" because it was an ordinance for the appropriation of money, exempt from referendum under Detroit City Charter, art 12, § 101. The trial court granted plaintiff's motion, granted the third-party defendants' motion against defendant, and denied defendant's motion. Later that month, defendants claimed an appeal with the Court of Appeals. They did not assert any claim for a temporary injunction and did not move to stay the trial court's decision. Before the Court of Appeals reached

---

[1] The city clerk cited a problem with the petition's description of ordinance 35-98, required by Detroit City Charter, art 12, § 102, as an additional reason for denying certification. The validity of the description, and the city clerk's decision, however, are not before this Court.

[2] Plaintiff points out that the defendant mentioned the temporary injunction in the counterclaim, but did not pursue it before the trial court.

4

a decision, this Court took jurisdiction over the case. 464 Mich 855 (2001).

With its trial court victory, plaintiff pressed on with its plans for a temporary casino. Plaintiff renovated its chosen building and opened the temporary casino in July 1999. The temporary casino is approximately 75,000 square feet, contains various games including approximately 2,500 slot machines, and takes in over $1 million a day. Also, plaintiff constructed a nine-deck parking structure, which opened in December 1999, adjacent to the temporary casino.

## II

Defendants request this Court to reverse the trial court's decision and compel the city of Detroit to schedule a referendum election on ordinance 35-98 so the voters of Detroit can reject the ordinance. However, such a remedy would be impossible. With plaintiff having completed its temporary casino, even if there were a referendum on ordinance 35-98, and even if the voters of Detroit were to reject the ordinance, plaintiff's temporary casino would be a prior nonconforming use that could remain despite any zoning change. Because a referendum could not change the zoning at plaintiff's temporary casino, the remedy defendants request is moot, and this case should be dismissed.

In *Heath Twp v Sall,* 442 Mich 434; 502 NW2d 627 (1993), this Court discussed prior nonconforming uses when zoning changes were effected by referendum. There, the defendants purchased land intending to build a mobile home park. The township rezoned the land to accommodate the defendants'

5

intent, but township residents brought a referendum and voted to return the land to its original zoning, under which the mobile home park was not allowed. Before the referendum returned the land to its original zoning classification, though, the defendants had taken steps toward constructing the mobile home park. This Court had to decide whether the steps the defendants had taken were sufficient to establish a prior nonconforming use, which requires that the property owner must have, at the least, engaged in work of a substantial character done in preparation for an actual use of the premises. See *id.* at 436-439. Elaborating, we quoted from our decision in *Gackler Land Co, Inc v Yankee Springs Twp,* 427 Mich 562, 574-575; 398 NW2d 393 (1986):

> The actual use which is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner. In this regard, preliminary operation such as ordering plans, surveying the land, and the removal of old buildings are insufficient to establish a nonconforming use. The test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, whether there has been any tangible change in the land itself by excavation and construction. [*Heath Twp, supra* at 440 (citations and internal quotations omitted).]

If plaintiff MGM Grand's activities at the temporary casino site pass this test, even if there were a referendum and zoning change, the zoning at plaintiff's temporary casino could not be changed.

Plaintiff's temporary casino would be a prior nonconforming use because its operations go well beyond the preliminary requirements identified in our case law. Here, plaintiff has completely refurbished its building to serve as

6

a casino, and has constructed a large new parking deck next to the refurbished building. This certainly amounts to a tangible change in the land. In addition, though, the analysis from *Heath Twp* was directed at an incomplete development that was alleged to be sufficient to comprise a nonconforming use, and considered only construction toward the development that occurred before the zoning was restricted. In this case, we have a completed business that has been operating for nearly two years. Thus, plaintiff's temporary casino would certainly be a lawful and existing use, see MCL 125.216(1), insulated from any subsequent zoning changes.

Defendant's failure to move to stay the trial court's decision, or to pursue a temporary injunction, and the resulting establishment of plaintiff's temporary casino are intervening changes in the facts of this case that make defendant's requested relief moot. As mentioned above, even if there were a referendum election on ordinance 35-98, and even if the voters of Detroit rejected the zoning of plaintiff's temporary casino site adopted by that ordinance, the zoning at the temporary casino site would remain because plaintiff would have established a nonconforming use that cannot be altered by a subsequent zoning change. See *UAW v Governor* at 582; *Crawford Co* at 93. Hence, there is nothing for us to grant for defendants. Absent a possible remedy, this case has become moot. When a case is moot, rather than affirm the substance of the lower court's decision, the proper resolution is dismissal. I, therefore, disagree with the majority decision to affirm the trial court's judgment in

7

favor of plaintiff.  Additionally, I point out that, in addressing mootness, the majority relies on federal decisions, which, with a justiciability question like mootness, do not necessarily apply.  See *ASARCO, Inc v Kadish,* 490 US 605, 617; 109 S Ct 2037; 104 L Ed 2d 696 (1989).

### III

For the reasons stated, this case is moot and should be dismissed.  I respectfully dissent from the majority decision to affirm the lower court.

KELLY, J., concurred with CAVANAGH, J.

MGM GRAND DETROIT, L.L.C.,

    Plaintiff-Appellee,

v                              No.  119309

COMMUNITY COALITION FOR EMPOWERMENT
INC., and ERNEST JOHNSON,

    Defendant-Appellants,

v

JACKIE L. CURRIE, in her capacity as
CITY CLERK FOR THE CITY OF DETROIT and
DETROIT CITY COUNCIL,

    Third-Party Defendants-Appellees.

_____

WEAVER, J. (*dissenting*).

I respectfully dissent from the majority's decision affirming the  circuit court's judgment granting MGM's motion for summary disposition because I believe that leave was precipitately granted in this matter.  I would dismiss our jurisdiction over this case and remand to the Court of Appeals for continuation of the proceedings there.

On May 24, 2001 this Court, on its own motion, took jurisdiction as on leave granted before decision by the Court of Appeals.[3]  It did so saying "[i]t appears that the issues raised regarding whether an ordinance is subject to referendum

_____

[3]The Court of Appeals had already had oral argument on this case, but had not yet issued an opinion.

are sufficiently related to the issues raised in *Michigan United Conservation Clubs v Secretary of State*, Supreme Court Docket No. 119274, that the cases should be considered together." (Docket No. 119309.) The Court released its opinion in *Michigan United Conservation Clubs v Secretary of State*, 464 Mich 359; ___ NW2d ___ (2001). Obviously they are no longer being considered together.

The Court believed that consideration of the two cases would afford a better perspective on the issues that they appeared to have in common. However, after oral arguments, it became apparent that leave was improvidently granted in this case. The issues in this case were too dissimilar to be considered with *Michigan United Conservation Clubs*. While art 2, § 9 of the 1963 Michigan Constitution states that "[t]he power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds," § 12-101 of the Detroit City Charter provides in pertinent part:

> The voters of the city reserve the power to enact city ordinances, called the "initiative," and the power to nullify ordinances, enacted by the city, called the "referendum." However, these powers do not extend to the budget or *any ordinance for the appropriation of money*; the referendum power does not extend to any emergency ordinance. [Emphasis added.]

Additionally, in this case there is also the underlying issue whether the ordinance in fact contains an appropriation. Appellants assert that the ordinance does not incur any obligation as required by the definition of appropriation under the Uniform Budgeting and Accounting Act, that the funds

2

paid to the city by MGM are not "public funds," and that the ordinance merely authorizes an appropriation, but is not itself an appropriation.

I believe that we should remand this case to the Court of Appeals for a decision on all the issues in light of our recent opinion in *Michigan United Conservation Clubs*, rather than issue an opinion on certain issues[4] and remand the remainder of the case.

---

[4]In the grant order, this Court limited the appeal "to the issues concerning whether City of Detroit ordinance 35-98 is exempt from the referendum provision of the City Charter because it is an ordinance for the appropriation of money."

3